UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Mahlon Martin,<br><br>      Plaintiff,<br><br>vs.<br><br>First Advantage Background Services<br>Corp. and Wells Fargo Bank, NA,<br><br>      Defendants. | Case No. 11-cv-03357 (MJD/LIB)<br><br>**DEFENDANT WELLS FARGO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** |

## I. INTRODUCTION

Federal law – specifically, the Secure and Fair Enforcement for Mortgage Licensing Act of 2008 ("SAFE Act") –required Wells Fargo Bank, NA ("Wells Fargo") to conduct a background check on Plaintiff Mahlon Martin ("Martin").  When Wells Fargo obtained the results of that background check from First Advantage Background Services Corp. ("First Advantage"), Wells Fargo learned that Martin had a criminal record.  Section 19 of the Federal Deposit Insurance Act ("Section 19") and Wells Fargo policy designed to comply with Section 19 required Wells Fargo to terminate Martin based upon the results of the background check.

Martin now contends that before his termination, Wells Fargo failed to provide him proper Fair Credit Reporting Act ("FCRA") notices.  However, this claim presupposes that the background check constituted a consumer report, which it did not.

The FCRA does indeed impose certain notice obligations on employers who obtain consumer reports for employment purposes.  However, the statutory definition of a

ND: 4830-6515-9694

"consumer report" specifically excludes background checks conducted in order to comply with law or corporate policy.  Given that legal and policy compliance was precisely the purpose of the background check that gave rise to this case, that background check was not a "consumer report" for purposes of the FCRA.  Failing to establish that Wells Fargo obtained a consumer report, Martin's sole claim against Wells Fargo fails as a matter of law, and Wells Fargo should be dismissed with prejudice.

## II.    STATEMENT OF FACTS

### A.    Factual Background.

The Complaint alleges that Wells Fargo employed Martin in its default/collections department "[i]n or around August 2009." (Complaint ¶ 12.)  "In or around October 2010, [Martin] accepted a position as a TeleSales Specialist" in Wells Fargo's home mortgage department.  (*Id*. at ¶ 17.)  In January 2011, while in this position, "Plaintiff consented to another background check" (the "Background Check").  (*Id*. at ¶ 18.)  First Advantage conducted the Background Check.  (*Id*. at ¶ 19.)

Wells Fargo terminated Martin as a result of the Background Check.  (*Id*. at ¶ 25.) Wells Fargo told Martin that based upon his criminal record, he was "ineligible for employment with Wells Fargo."  (*Id*. at ¶ 26.)  When he inquired further, Wells Fargo explained that his employment was terminated "because of a criminal matter in 1997." (*Id*. at ¶ 29.)  In particular, Martin had a criminal matter in 1997 in Ramsey County.  (*Id*. at ¶¶ 30, 31.)

Apparently acknowledging that Wells Fargo believed that it had an obligation to terminate him pursuant to law, Martin nevertheless contends that he "is not prohibited

from employment with Wells Fargo according to state and federal laws." (*Id*. at ¶ 35; *see also id*. at ¶ 33.)  Likewise, acknowledging that his criminal matter implicated "Wells Fargo's policies memorialized in [its] Team Member Handbook," Martin disputes that Wells Fargo's written policies prohibited him from serving as a loan originator. (*Id*. at ¶ 34.)  He also contends that First Advantage's Background Check "contained inaccurate information regarding [him] and his criminal record," which he presumes would have led to a different result, had it been accurate. (*See id.* at ¶¶ 52, 53, 56.)

      B.      **<u>Background Checks in the Financial Services Industry</u>.**

As a bank, Wells Fargo is subject to various federal laws requiring it to conduct background checks of its employees.  Section 19, as amended by the Financial Institutions Reform, Recovery and Enforcement Act, prohibits FDIC-insured institutions such as Wells Fargo from employing any person who has been convicted of a crime of dishonesty or breach of trust, among other things.  12 U.S.C. § 1829(a).  Violation of this section may result in a fine of up to $1,000,000.00 per day, imprisonment up to five years, or both.  12 U.S.C. § 1829(b).

Wells Fargo is also legally obligated to maintain fidelity bond insurance. *See* 12 C.F.R. § 7.2013.  Fidelity bond insurance requires an employer such as Wells Fargo to monitor employees' suitability for employment. *Id*.

In 2008, Congress passed the SAFE Act, which created a mandatory licensing and registry system for mortgage loan originators, such as Martin.  12 U.S.C. § 5101 *et seq*.  The SAFE Act requires banks such as Wells Fargo to register their mortgage loan originators (such as Martin) between January 31 and July 29, 2011. *See* 12 U.S.C. §

5101; 12 C.F.R. § 208.103(a)(3); http://www.ffiec.gov/safeact.htm (Federal Financial Institutions Examination Council SAFE Act FAQs).  The SAFE Act provides no exception for existing employees such as Martin, even if those employees have previously undergone background checks.  12 C.F.R. § 208.103(a)(2).

### III.   LEGAL STANDARD

When considering a motion to dismiss, the Court should "accept as true all of the factual allegations contained in the complaint, and review the complaint to determine whether its allegations show that the pleader is entitled to relief." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).  However, the Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences, and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Servs. of Am. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir. 2003).  Indeed, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).  "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.*  Ultimately, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level[,] … [and must contain] enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombley*, 127 S. Ct. 1955, 1965, 1974 (2007) (overruling *Conley v. Gibson*, 355 U.S. 41 (1957)).

"In addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b), the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record." *Blakley v. Schlumberger Tech. Corp.*, 648

ND: 4830-6515-9694                                              4

F.3d 921, 931 (8th Cir. 2011).  Likewise, materials that do not contradict the Complaint may be considered.  *Missouri Ex. Rel. Nixon v. Couer D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999).

## IV.   LEGAL ARGUMENT

Martin's sole claim against Wells Fargo alleges a violation of FCRA.[1]  (Complaint ¶¶ 80-83.)  In particular, Martin contends that Wells Fargo violated 15 U.S.C. § 1681b(b)(3), which provides that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide" the employee with certain information.  15 U.S.C. § 1681b(b)(3) (emphasis added.)  Thus, to assert a violation of this provision, Martin must establish that Wells Fargo used a "consumer report."  *Id*.

Generally, a "consumer report" under the FCRA is any "communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used … as a factor in establishing the consumer's eligibility for … employment purposes."  15 U.S.C. § 1681a(d)(1).  However, the FCRA's definition of "consumer report" expressly excludes, among other things, "a communication described in subsection (o) or (x)."  15 U.S.C. § 1681a(d)(2)(D).  In this case, the Background Check upon which Martin bases his claim

---

[1] In fact, all of Martin's claims allege FCRA violations.  (Complaint ¶¶ 48-83.)

falls within the scope of subsection (x) (which was re-designated as subsection (y) on July 21, 2010 (the "Exemption")).[2]

The Exemption excludes "certain communications for employees investigations" from the definition of a "consumer report." 15 U.S.C. § 1681a(y). In particular, a communication is excluded if:

>    (A) but for subsection (d)(2)(D), the communication would be a consumer report;
>
>    (B) the communication is made to an employer in connection with an investigation of—
>        (i) suspected misconduct related to employment; or
>        (ii) compliance with Federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer;
>
>    (C) the communication is not made for the purpose of investigating a consumer's credit worthiness, credit standing, or credit capacity; and
>
>    (D) the communication is not provided to any person except –
>        (i) to the employer or an agent of the employer;
>        (ii) to any Federal or State officer, agency, or department, or any officer, agency, or department of a unit of general local government;
>        (iii) to any self-regulatory organization with regulatory authority over the activities of the employer or employee;
>        (iv) as otherwise required by law; or
>        (v) pursuant to section 608.

15 U.S.C. § 1581a(y)(1).

Thus, if the Background Check meets this four-part test, it is not a consumer report and does not trigger the notices that form the basis for Martin's claim against Wells

---

[2] Congress apparently neglected to change the reference in 1681a(d)(2)(D) from subsection (x) to subsection (y) following its insertion of an entirely new subsection (w).

Fargo. The Background Check does, in fact, meet the Exemption and the Court should dismiss Martin's claim against Wells Fargo.

### A. But for the Exemption, the Background Check Would Be a Consumer Report.

The first element of the Exemption requires that but for the Exemption, the communication would be a consumer report. 15 U.S.C. §1681a(y)(1)(A). Without analyzing the Exemption, Martin himself asserts that the Background Check is a consumer report. (*See, e.g.,* Complaint ¶¶ 13, 51, 60, 69, 76.) Of course, Martin must do so, or else the Background Check is otherwise not a consumer report and his claims fail. Thus, the first element of the Exemption is met.

### B. The Background Check Was Provided to Wells Fargo in Connection with its Efforts to Comply with Federal Law and its own Policies.

The second element of the Exemption requires that:

the communication is made to an employer in connection with an investigation of—
    (i) suspected misconduct related to employment; or
    (ii) compliance with Federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer;

15 U.S.C. §1681a(y)(1)(B). A review of Martin's own Complaint demonstrates that Well Fargo obtained the Background Check to ensure its compliance with federal law and its own policies, thus satisfying this element of the Exemption.

As discussed above, Wells Fargo conducts background checks to comply with a bevy of federal laws. In this case, Wells Fargo initiated the Background Check to comply with the SAFE Act. *See* 12 U.S.C. § 5101; 12 C.F.R. § 208.103(a)(3);

http://www.ffiec.gov/safeact.htm (Federal Financial Institutions Examination Council SAFE Act FAQs).  The results of the Background Check raised concerns about Wells Fargo's compliance with Section 19.  12 U.S.C. § 1829(a).  Mr. Martin acknowledges as much in his Complaint, stating that Wells Fargo terminated his employment because of the criminal matter discovered in the Background Check.  (Complaint ¶¶ 25-35.)  Likewise, Martin acknowledges that his criminal matter implicated Wells Fargo's preexisting written policies.  (Complaint ¶ 34.)  Thus, the Background Check meets the second element of the Exemption.

Martin may assert, as he does throughout the Complaint, that the Background Check was inaccurate and should not have caused his termination.  Such an argument misses the point.  The Exemption asks only the <u>purpose</u> of the communication, not the content.  This fact is illustrated by *Millard v. Miller*, 05-C-103-S, 2005 U.S. Dist. LEXIS 16809 (W.D. Wis. Aug. 9, 2005).

In *Millard*, the defendants, including Millard's former employer, suspected that Millard lied to postpone an independent medical examination associated with her workers' compensation claim.  *Id*. at *2.  In order to prove the suspected deception, the defendants obtained Millard's credit report to investigate her credit card activity on the day in question.  *Id*.  In an effort to defeat the Exemption, Millard argued that "the facts were insufficient to support a reasonable suspicion that [she] had lied …"  *Id*. at 6.  The Court responded,

> [Millard] does not dispute, however, that regardless of the reasonableness, defendants were in fact acting on their suspicion that plaintiff lied to obtain

a delay in the examination. So long as this was the genuine motivation for plaintiff's [sic] conduct the provision is applicable.

*Id*. at *6-7. Thus, the ultimate question was the defendants' motivation or purpose in conducting the investigation.

Martin does not, and cannot, dispute that Wells Fargo obtained the Background Check in its efforts to comply with federal law and its own written policies. Thus, the second element of the Exemption is met.

### C. The Background Check Was Not Made for the Purpose of Investigating Martin's Credit.

The third element of the Exemption requires that the Background Check was not "for the purpose of investigating [Martin's] credit worthiness, credit standing, or credit capacity." 15 U.S.C. §1681a(y)(1)(C). Again, Martin acknowledges that Well Fargo's purpose in conducting the Background Check was to review his criminal background to ensure compliance with federal law and corporate policy. (Complaint ¶¶ 25-35.) He does not contend, nor can he, that Wells Fargo considered his consumer credit. (*See generally* Complaint.) Thus, this Exemption element is met as well.

### D. The Background Check Was Not Distributed Beyond the Exemption's Parameters.

Finally, the Exemption requires that the

(D) the communication is not provided to any person except –
    (i) to the employer or an agent of the employer;
    (ii) to any Federal or State officer, agency, or department, or any officer, agency, or department of a unit of general local government;
    (iii) to any self-regulatory organization with regulatory authority over the activities of the employer or employee;
    (iv) as otherwise required by law; or
    (v) pursuant to section 608.

15 U.S.C. §1681a(y)(1)(D). Martin does not, and cannot, allege distribution beyond this enumerated list. (*See generally* Complaint.) Because all four elements of the Exemption are met, the Background Check is not a "consumer report," and Martin's sole claim against Wells Fargo should be dismissed with prejudice.

## V. CONCLUSION

To assert a valid FCRA claim against Wells Fargo, Martin must establish that the Background Check constituted a consumer report. The definition of a "consumer report" excludes communications for the purpose of ensuring compliance with federal law and written policies. As the Background Check indisputably served to comply with the SAFE Act, Section 19 and Well Fargo's own policies, it meets the Exemption and is not a "consumer report." Thus, Martin's FCRA claim against Wells Fargo fails as a matter of law, and Wells Fargo should be dismissed with prejudice.

Date: December 21, 2011            NILAN JOHNSON LEWIS PA

By: s/ David A. James
Joseph G. Schmitt (Reg. No. 231447)
David A. James (Reg. No. 337389)
400 One Financial Plaza
120 South Sixth Street
Minneapolis, MN 55402-4501
612.305.7500
jschmitt@nilanjohnson.com
djames@nilanjohnson.com

*ATTORNEYS FOR DEFENDANT
WELLS FARGO BANK, NA*