UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

MAHLON MARTIN,

        Plaintiff,         **MEMORANDUM OF LAW & ORDER**
v.                                  Civ. No. 11-3357 (MJD/LIB)

FIRST ADVANTAGE BACKGROUND
SERVICES CORP., and WELLS FARGO
BANK, NA,

        Defendants.

---

Daniel Gray Leland and Joni M. Thome, Baillon Thome Jozwiak Miller Wanta, LLP, Counsel for Plaintiff.

Jenny L. Sautter, Meagher & Geer, PLLP, and Jason A. Spak, Picadio Sneath Miller & Norton, PC, Counsel for Defendant First Advantage Background Services Corp.

Joseph G. Schmitt and David A. James, Nilan Johnson Lewis, PA, Counsel for Defendant Wells Fargo Bank, NA.

---

**I.    Introduction**

      This matter is before the Court on motions to dismiss by Defendants First Advantage Background Services Corporation and Wells Fargo Bank, NA. [Docket Nos. 4 and 6.] The Court heard oral argument on April 13, 2012.

1

**II.     Background**

Plaintiff began working for Defendant Wells Fargo Bank, NA ("Wells Fargo") as a contract worker in May 2009.  In July 2009 he was laid off, but in August 2009 he was hired by Wells Fargo's default/collections department. Plaintiff consented to criminal background checks when he was hired for both of those positions, and the results of those checks were unremarkable.

In October 2010, Plaintiff accepted a new position as a TeleSales Specialist in Wells Fargo's home mortgage department.  In January 2011, Plaintiff consented to another background check.  A criminal background report ("report") was prepared by Defendant First Advantage Background Services Corporation ("First Advantage").   The report contained the following entry relating to records obtained from Ramsey County District Court:

> Case Number     :     62-TX-97-041983
> Type            :     MISDEAMENOR
> Date Filed      :     6/27/1997
> Charge          :     IMPERSONATING A OFFICER
> Offense Date    :
> Arrest Date     :     5/29/1997
> Disposition     :     10/9/1998    GUILTY
> Sentence        :     GUILTY: 09/15/1997
>                       JAIL: 1 YEAR
>                       PROBATION: 1 YEAR/UNSUPERVISED
>                       NOTE: CASE DISMISSED 10/09/1998

(Spak Aff. [Docket No. 13], Ex. 1.)

On February 4, 2011 Plaintiff met with his supervisor at Wells Fargo, and she informed him that his employment was terminated as a result of the information contained in the report. She gave Plaintiff a letter entitled "Letter 1—Team members ineligible for continued employment due to background check results" and which stated that "a record was found making [Plaintiff] ineligible for employment with Wells Fargo." (Compl. [Docket No. 1-1] ¶ 26.)

Wells Fargo did not give Plaintiff notice of the report or a chance to respond to it before his termination. Plaintiff sought more information about his termination from Wells Fargo's human resources department. When he learned that the termination was based on a 1997 criminal conviction, he retrieved documents from the Ramsey County District Court indicating that, after Plaintiff was charged, the case was stayed for one year, and that at the end of that year, the charge was dismissed. (Martin Decl. [Docket No. 18], Ex. a.) There is no indication that Plaintiff was ever found guilty, sentenced to one year in jail, or incarcerated for any length of time. Plaintiff alleges that he faxed the relevant records to Wells Fargo, explaining that he was not disqualified from employment.

3

Plaintiff also filed a "Notice of Consumer Dispute" form with First Advantage, noting that the charge of impersonating an officer had been "vacated and dismiss[ed]."  (Spak Aff. [Docket No. 13], Ex. 3.)  First Advantage responded to Plaintiff in a letter which stated that their investigation had "confirmed the information" in the original report.  (Spak Aff., Ex. 4.)

Plaintiff filed this suit in Hennepin County District Court, setting out five counts, all of which relate to violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 <u>et seq</u>.  The first four counts, directed at First Advantage, are:  failure to follow reasonable procedures to assure maximum possible accuracy in violation of FCRA (Count I); failure to follow strict procedures for use of public record information (Count II); failure to comply with obsolescence requirements (Count III); and failure to follow procedures in case of disputed accuracy (Count IV).  Count V, failure to provide pre-adverse action disclosures, is directed at Wells Fargo.  Defendants removed the case to this Court.  Both Defendants have now moved for dismissal of Plaintiff's claims.

**III.   Discussion**

    **A.   Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true. Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

In deciding a motion to dismiss, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." PureChoice, Inc. v. Macke, Civil No. 07-1290, 2007 WL 2023568, at *5 (D. Minn. July 10, 2007) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).

**B.     Whether the report in this case was a "Consumer Report" under the FCRA**

**1.   Definition of "Consumer Report"**

Each of the counts in Martin's complaint alleges a violation of FCRA, and all but one of those counts (Counts I-III and V) require a finding that the report prepared by First Advantage and relied upon by Wells Fargo is a "consumer report" under that Act.

The definition of a "consumer report" includes a report "by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living," when such a report is "used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes."  15 U.S.C. § 1681a(d)(1)(B).  Certain reports are excluded from this definition.  A communication which otherwise would be considered a "consumer report" is excluded if,

> (B) the communication is made to an employer in connection with an investigation of--
> > (i) suspected misconduct relating to employment; or
> > (ii) compliance with Federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer;

  (C) the communication is not made for the purpose of investigating a consumer's credit worthiness, credit standing, or credit capacity; and
  (D) the communication is not provided to any person except--
    (i) to the employer or an agent of the employer;
    (ii) to any Federal or State officer, agency, or department, or any officer, agency, or department of a unit of general local government;
    (iii) to any self-regulatory organization with regulatory authority over the activities of the employer or employee;
    (iv) as otherwise required by law; or
    (v) pursuant to section 1681f of this title.

15 U.S.C. § 1681a(y)(1).[1]

  There is little doubt that, without the operation of the exemption found in 18 U.S.C. § 1681a(y) ("the exemption"), the report prepared by First Advantage would be considered a consumer report under 15 U.S.C. § 1681a(d)(1)(B). The parties also agree that Wells Fargo did not obtain the report "for the purpose of investigating [Plaintiff's] credit worthiness, credit standing, or credit capacity" and that the report was provided only to Wells Fargo, Plaintiff's employer. See 15 U.S.C. § 1681a(y)(1)(C)-(D).

  A key issue in this case is therefore whether the report was made to Wells Fargo "in connection with an investigation of . . . suspected misconduct related to employment; or compliance with Federal, State, or local laws and regulations,

---

[1] Prior to July 21, 2010, this exemption was codified at 18 U.S.C. § 1681a(x).

7

the rules of a self-regulatory organization, or any preexisting written policies of the employer." 15 U.S.C. § 1681a(y)(1)(B). If it was, the exemption applies, and Plaintiff's claims on Counts I, II, III and V cannot succeed because the FCRA provisions which underlie those claims apply only to "consumer reports."

### 2. Scope of the Exemption

Wells Fargo contends that its purpose in obtaining the report was to comply with Federal law and, therefore, the exemption applies and the report is not a "consumer report." In response, Plaintiff first argues that the exemption applies only to reports obtained in investigations of alleged employee misconduct. In support he notes that certain aspects of the legislative history indicate that Congress enacted the exemption in response to applications of FCRA to instances where reports were obtained in response to allegations of workplace misconduct. Plaintiff notes that there has never been an allegation of misconduct on his part.

Defendants argue that reading the exemption to encompass only investigations of employee misconduct would essentially read out the clause referring to "investigation[s] of . . . compliance with Federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting

written policies of the employer." 15 U.S.C. § 1681a(y)(1)(B); see Duncan v. Walker, 533 U.S. 167, 174 (2001) (explaining that courts should give effect to "every clause and word of a statute"). Moreover, Defendants argue that Plaintiff's arguments regarding the legislative history of the exemption are irrelevant in this case because the meaning of the statute's language is plain. See United States v. Ron Pair Enters., 489 U.S. 235, 240-41 (1989) ("[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute."). Finally, Defendants note that the legislative history does not necessarily support Plaintiff's contention that Congress intended for the exemption to apply only to misconduct investigations.

Plaintiff's position that the exemption applies only to investigations of employee misconduct does not square with the text of the statute. Plaintiff's reading entirely elides the clause in the exemption relating to compliance with laws, regulations, and internal policies. This language does not require that an employer be investigating alleged employee misconduct in order to avail itself to the exemption. The Court need not delve into a historical analysis of the exemption where its language is plain and unambiguous, see Ron Pair Enters., 489 U.S at 240-41, but the Court notes that the legislative history is not as clear as

Plaintiff asserts.  See, e.g., 149 Cong. Rec. H8124 (daily ed. Sept. 10, 2003) (statement of Rep. Sheila Jackson-Lee) (noting that the exemption would allow employers "to assure compliance with civil rights laws and other laws, as well as written workplace policies").  The Court must conclude that a report received and used in connection with an investigation into the employer's compliance with laws, regulations, or preexisting written internal policies is sufficient to trigger the exemption.

### 3. Compliance with Federal Laws

Defendants assert that Wells Fargo sought the report generated by First Advantage in connection with its efforts to comply with federal law, though each Defendant has focused on a different federal law with which Wells Fargo is supposed to have sought to comply.  Plaintiff argues that because the federal statutes cited by Defendants do not require an employer to conduct a criminal background check, the exemption should not apply.  Plaintiff also argues that this Court should not determine at the motion to dismiss stage Wells Fargo's intentions when it sought the report from First Advantage.

### a. Relevant Federal Statutes and Regulations

Defendants claim that Wells Fargo sought a criminal background report in connection with its efforts to comply with several federal statutes and regulations. The Federal Institutions Reform, Recovery, and Enforcement act of 1989 ("FIRREA") prohibits "any person who has been convicted of any criminal offense involving dishonesty or a breach of trust or money laundering, or has agreed to enter into a pretrial diversion or similar program in connection with a prosecution for such offense" from "participat[ing], directly or indirectly, in the conduct of the affairs of any insured depository institution." 12 U.S.C. § 1829(a)(1)(A). An individual who violates this provision can be subject to a fine of up to $1,000,000 or five years imprisonment, or both. 12 U.S.C. § 1829(b).

Wells Fargo notes that it is also obligated to comply with the SAFE Act, 12 U.S.C. § 5101 et seq., which requires that mortgage loan originators working for banks such as Wells Fargo be licensed and registered in a national registry. See 12 C.F.R. § 34.101. The regulations which implement the SAFE Act require Wells Fargo to ensure that its "mortgage loan originator[s] . . . submit to the Registry, or [the bank] must submit on behalf of the employee[s]" a variety of information,

including convictions for the types of crimes prohibited by FIRREA. 12 C.F.R. § 34.103(d). Another SAFE Act regulation requires that Wells Fargo

> [e]stablish a process for reviewing employee criminal history background reports received pursuant to this subpart, taking appropriate action consistent with applicable Federal law, including section 19 of the Federal Deposit Insurance Act (12 U.S.C. 1829) and implementing regulations with respect to these reports, and maintaining records of these reports and actions taken with respect to applicable employees.

12 C.F.R. 34.104(h). Finally, Wells Fargo's employment handbook indicates that "[a]ny individual who doesn't meet the FIRREA criteria, isn't bondable, or otherwise doesn't meet our background screening cannot be employed or continue employment at Wells Fargo." (Spak Aff., Ex. 2 at 12.) Defendants therefore argue that Wells Fargo's decision to obtain a criminal background check was made in connection with an investigation to ensure compliance with FIRREA, the SAFE Act, and Wells Fargo's own written policies.

In response, Plaintiff points to other parts of the SAFE Act which indicate that that Wells Fargo may not be <u>required</u> to run a criminal background check on its employees in order to comply with those laws and policies. He notes that the employee, not the employer, is required to attest to the information submitted to the registry. See 12 C.F.R. § 34.103(d)(2)(ii). Plaintiff also notes that the agencies

adopting the regulations cited by Defendants have explained that, while an employer is required to verify the information submitted by an employee to the registry, "institutions need only compare the information supplied by the employee with the information contained in the institution's own records."  See 75 Fed. Reg. 44656, 44673 (July 28, 2010).  Plaintiff therefore argues that a criminal background check is unrelated to Wells Fargo's compliance with the Safe Act.

Even if Plaintiff is correct that Wells Fargo was not required to run a criminal background check in order to comply with the SAFE Act, the exemption might still apply.  The exemption applies to reports obtained "in connection" with "an investigation" into "compliance" with federal and state law, as well as written company policies.  15 U.S.C. § 1681a(y)(1)(B).  There is no requirement that the report be required or necessary for such compliance.  As Wells Fargo has noted, it may submit information to the registry on its employees' behalf, and information about employees' criminal history is required.  Moreover, banks are required to "[e]stablish a process for reviewing employee criminal history background reports," a requirement which contemplates they will receive such reports.  12 C.F.R. 34.104(h).  Finally, Plaintiff does not deny that, under FIRREA, Wells Fargo could be subject to sanctions if it were to employ loan originators

13

who have relevant criminal histories, see 12 U.S.C. § 1829(b), or that Wells Fargo's written policies explicitly require that employees "meet the FIRREA criteria," be "bondable," and "otherwise meet [its] background screening." (Spak Aff., Ex. 2 at 12.)

### b. Application of Motion to Dismiss Standard

Plaintiff argues that Defendants' assertions about the purpose of the report should not be credited at the motion to dismiss stage because the Court cannot consider evidence of Wells Fargo's intentions or procedures in the lead up to its decision to obtain the report. Defendants argue that part of Plaintiff's burden in stating a claim for which relief can be granted is setting out factual allegations which, if true, would lead to the conclusion that the report was a "consumer report" under FCRA. Defendants note that Plaintiff has acknowledged that First Advantage sells "consumer files to potential employers wishing to investigate the criminal record history of individuals" and that Wells Fargo "obtained [the report] from First Advantage for employment purposes." (Compl. ¶¶ 22-23.) He does not allege that Wells Fargo sought the report to determine his "credit worthiness, credit standing, or credit capacity." See 15 U.S.C. § 1681a(y)(1).

Although this issue may prove simple at the summary judgment stage, the Court declines to grant Defendants' motion to dismiss. At this point, the Court's examination is properly limited to "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." PureChoice, Inc., 2007 WL 2023568, at *5. Whether or not the report at issue in this case qualifies as a consumer report depends on the circumstances surrounding Wells Fargo's decision to obtain it. That information is uniquely in the hands of Wells Fargo, and it would not be appropriate for this Court to examine selected pieces of evidence submitted by Defendants without allowing Plaintiff the benefit of discovery. For these reasons, the Court denies Defendants' motions to dismiss Counts I, II, III, and V.

At oral argument, Plaintiff's counsel requested leave to amend his complaint to include state law claims if the Court were to find that report was not a "consumer report" under FCRA. While the Court makes no such finding at this stage, in light of the legal conclusions set out above, the Court will grant Plaintiff leave to amend his complaint should he wish to add alternate state law claims.

### C. Count IV—Failure to Reinvestigate

Count IV relates to First Advantage's response to Plaintiff's "Notice of Consumer Dispute" ("Notice") in which he stated that the 1997 charge of impersonating an officer had been vacated and dismissed.

Under FCRA, First Advantage is required to reinvestigate information contained in its files where a consumer files a dispute.

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A). To maintain a claim for failure to reinvestigate, a plaintiff must show that the challenged item of information was, in fact, inaccurate. See Paul v. Experian Info. Solutions, Inc., 793 F. Supp. 2d 1098, 1102 (D. Minn. 2011) (collecting cases).

As discussed above, the report prepared by First Advantage contained the following entry with respect to Plaintiff's criminal history:

   Case Number    :    62-TX-97-041983
   Type           :    MISDEAMENOR

16

| | | |
|---|---|---|
| Date Filed | : | 6/27/1997 |
| Charge | : | IMPERSONATING A OFFICER |
| Offense Date | : | |
| Arrest Date | : | 5/29/1997 |
| Disposition | : | 10/9/1998    GUILTY |
| Sentence | : | GUILTY: 09/15/1997 |
| | | JAIL: 1 YEAR |
| | | PROBATION: 1 YEAR/UNSUPERVISED |
| | | NOTE: CASE DISMISSED 10/09/1998 |

Plaintiff's Notice indicated that he was disputing an element of his "criminal record" and specifically noted the case number from the 1997 arrest. (Spak Aff., Ex. 3.)  He stated that "[t]he charge for impersonating [an] officer was vacated [and] dismiss[ed] by the Ramsey County Court."  (Id.)  First Advantage responded by stating that it had conducted a reinvestigation and that its "inquiries confirmed the information that [it had] in [its] files to be accurate." (Spak Aff., Ex. 4.)

First Advantage argues that Plaintiff has not stated a claim for which relief can be granted because he did not dispute an item of information which was inaccurately reported.  It contends that because Plaintiff did not specifically object to the particular lines of the report which stated that he was found guilty or that he was sentenced to one year in jail, he cannot claim that First Advantage

failed in its duty to reinvestigate. First Advantage also notes that the report correctly states that the charge had been dismissed.

Plaintiff argues, and the Court agrees, that First Advantage's approach holds his Notice to an overly stringent standard. In his Notice, Plaintiff clearly referenced the disputed conviction which he was disputing and stated that it had been dismissed or vacated. Plaintiff contends that a reasonable investigation would have shown that he was never found "guilty" of the charged offense (as the report twice indicates) and that he was not sentenced to one year in jail. He notes that the offense for which he was charged was a misdemeanor, the maximum punishment for which was up to 90 days incarceration and up to a $700 fine. The state court records do not mention any incarceration.

Based on the facts alleged by Plaintiff, it is difficult to credit First Advantage's argument that Plaintiff's Notice was insufficient. While the Notice was not as detailed as it might have been, it certainly put First Advantage on notice of the nature and subject of his complaint. Several items of information relating to the conviction highlighted in Plaintiff's Notice are alleged to have been entirely incorrect. First Advantage had a duty to conduct a <u>reasonable</u> reinvestigation. <u>See</u> <u>Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1155

18

(9th Cir. 2009); Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005); Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 429-31 (4th Cir. 2004).  In doing so, First Advantage bore a "grave responsibility" under FCRA "to ensure the accuracy of [the] information" contained in its report.  Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3rd Cir. 1997) (quoting 15 U.S.C. § 1681(a)(4)).  The Court concludes that Plaintiff has sufficiently stated a claim that First Advantage failed to conduct a reasonable investigation in response to the dispute raised in his Notice.

Accordingly, based on the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant First Advantage Background Services Corporation's Motion to Dismiss [Docket No. 4] and Defendant Wells Fargo Bank, NA.'s Motion to Dismiss [Docket No. 6] are both **DENIED.**

2. Plaintiff Mahlon Martin is granted leave to amend his complaint to add alternative state law claims.  Any such amendment must be completed within 30 days of the filing of this Order.


Dated:  July 13, 2012                                         s/ Michael J. Davis             
                                                                          Michael J. Davis
                                                                          Chief Judge
                                                                          United States District Court