UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Mahlon Martin, | Court File No. 11-CV-03357 (MJD/LIB) |
| Plaintiff, | **PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND** |
| vs. | |
| First Advantage Background Services Corp., and Wells Fargo Bank, NA, | |
| Defendants. | |

---

The Plaintiff, Mahlon Martin, by and through his undersigned attorneys, for his Complaint against Defendants, states and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.  Plaintiff Mahlon Martin is a natural person residing in the County of Hennepin, State of Minnesota.

2.  Defendant First Advantage Background Services Corporation is a Florida Corporation licensed and doing business in the County of Hennepin, State of Minnesota.

3.  Defendant Wells Fargo Bank, N.A., is a federally chartered bank that conducts business in the County of Hennepin, State of Minnesota.

4.  This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## FACTS

5. In or around May 2009, Plaintiff was employed as a contract employee by Defendant Wells Fargo Bank, N.A. ("Wells Fargo") through Masterson Personnel ("Masterson"), a third-party staffing agency.

6. In order to serve as a contract employee at Wells Fargo through Masterson, Plaintiff was required to submit to a criminal background check ("May 2009 consumer report").

7. Upon Plaintiff's best information and belief, ADP Screening and Selection Services prepared the May 2009 consumer report, which included a criminal background check, which was prepared for, and submitted to, Masterson and Wells Fargo.

8. Upon Plaintiff's best information and belief, Plaintiff's May 2009 consumer report was unremarkable.

9. Plaintiff was not notified by Masterson or Wells Fargo of any negative information in the May 2009 consumer report, nor did anyone indicate that he was precluded from employment with Wells Fargo through Masterson.

10. Plaintiff in fact worked as a contract employee at Defendant Wells Fargo through Masterson, until he was laid off in or around July 2009.

11. In or around August 2009, Plaintiff became employed by Defendant Wells Fargo in Wells Fargo's default/collections department.

12. At the time of Plaintiff's hire in August 2009, Plaintiff consented to a background check ("August 2009 consumer report").

13. Upon Plaintiff's information and belief, Plaintiff's August 2009 consumer report was unremarkable.

14. Plaintiff was not notified of any problems or negative information contained in the August 2009 consumer report, nor did anyone indicate that he was precluded from employment with Wells Fargo.

15. From August 2009 to October 2010, Plaintiff performed his position to the satisfaction of his employer, Defendant Wells Fargo.

16. In or around October 2010, Plaintiff accepted a position as a TeleSales Specialist in Defendant Wells Fargo's home mortgage department.

17. In or around January 2011, Plaintiff consented to another background check ("February 1, 2011 consumer report").

18. The February 1, 2011 consumer report was performed by Defendant First Advantage Background Services Corporation ("First Advantage").

19. At all times relevant hereto, Defendant First Advantage was a consumer reporting agency ("CRA") as defined by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a(f).

20. Defendant First Advantage maintains consumer files, which contain public record information concerning, among other things, the criminal record history of individuals.

21. Defendant First Advantage sells such consumer files to potential employers wishing to investigate the criminal record history of individuals.

22. At all times releveant hereto, Defendant First Advantage was a "business screening service" within the meaning of Minnesota Statutes § 332.70.

23. On or around February 1, 2011, Defendant Wells Fargo obtained the February 1, 2011 consumer report from First Advantage for employment purposes

24. On or around February 4, 2011, Plaintiff was asked to meet with his supervisor at Wells Fargo, Kia Larson ("Larson").

25. Larson informed Plaintiff that his employment with Wells Fargo was terminated due to the results of the February 1, 2011 consumer report.

26. Larson further handed Plaintiff a letter that read, "Letter 1 — Team members ineligible for continued employment due to background check results." According to this letter, "a record was found making [Plaintiff] ineligible for employment with Wells Fargo."

27. The letter informed Plaintiff that he was terminated effective February 4, 2011, the same day he was informed of his termination by Larson, and the same day Plaintiff received the letter labeled "Letter 1."

28. On or around February 4, 2011, Plaintiff telephoned Wells Fargo's human resources department to learn additional information about the circumstances of his termination.

29. Plaintiff was informed by Tami Burnham ("Burnham") that his employment was being terminated because of a criminal matter in 1997, and that he would receive a copy of the February 1, 2011 consumer report.

30. Plaintiff went to the Ramsey County Courthouse and retrieved a copy of the documents relating to his criminal charge in 1997.

31. The documents relating to Plaintiff's criminal matter in 1997 indicated that Plaintiff was charged with a misdemeanor, and that the case had been dismissed without any finding of guilt or conviction.

32. Plaintiff promptly faxed a copy of the court records to Burnham on February 4, 2011, and indicated that he was not disqualified from employment with Wells Fargo.

33. Plaintiff is not prohibited from serving as a loan originator according to state and federal laws and regulations.

34. Plaintiff is not prohibited from serving as a loan originator according to Wells Fargo's policies memorialized in Defendant Wells Fargo's "Wells Fargo Team Member Handbook."

35. Plaintiff is not prohibited from employment with Wells Fargo according to state and federal laws.

36. On or around February 7, 2011, after Plaintiff's termination, Plaintiff received a copy of the February 1, 2011 consumer report from Defendant First Advantage.

37. The documents that Plaintiff received on February 7, 2011, from Defendant First Advantage included a document titled, "Pre-Adverse Action Notification."

38. The "Pre-Adverse Action Notification" indicated that the contents of Plaintiff's consumer report were "under review in consideration of your employment and an adverse employment action may be based, in whole or in part, on this report."

39. A CRA is required to maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain or maintain employment is reported, that it is complete and up to date. 15 U.S.C. § 1692k(a)(2).

40. A CRA is also required to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1692e(b).

41. Despite the requirements of the FCRA, the February 1, 2011 consumer report prepared by First Advantage contained false and erroneous information.

42. The February 1, 2011 consumer report prepared by First Advantage erroneously reports that Plaintiff was convicted of a crime and was sentenced to one-year in jail and one-year probation.

43. Before Defendant Wells Fargo took adverse action against Plaintiff, it did not provide him a copy of the February 1, 2011 consumer report, a description in writing of his rights under the FCRA, an opportunity to dispute the accuracy of the information contained in the February 1, 2011 consumer report, or a pre-adverse action notification.

44. On or around April 22, 2011, pursuant to 15 U.S.C. § 1681i, Plaintiff wrote Defendant First Advantage challenging the accuracy of the February 1, 2011 consumer report prepared by First Advantage.

45. Thereafter, Plaintiff was notified by Defendant First Advantage that First Advantage believed that its consumer report was accurate and that no corrections would be made to Plaintiff's February 1, 2011 consumer report.

46. Upon Plaintiff's best information and belief, Defendant First Advantage has failed to correct, edit, or remove the false and erroneous information contained in Plaintiff's February 1, 2011 consumer report.

47. As a result of Defendants' actions and/or omissions, Plaintiff's employment with Defendant Wells Fargo was terminated, he has suffered lost wages and benefits, humiliation, emotional distress, attorneys' fees and costs, and other serious damages.

## COUNT I
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy in Violation of the Fair Credit Reporting Act
(Against Defendant First Advantage Background Services Corp.)**

48. Plaintiff realleges each and every paragraph of this Complaint.

49. Plaintiff is a "consumer" within the meaning of the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681a(c).

50. Defendant First Advantage Background Services Corporation is a "consumer reporting agency" within the meaning of the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f).

51. The background check regarding Plaintiff prepared by Defendant First Advantage on or around February 1, 2011, is a "consumer report" within the meaning of the Fair Credit Reporting Act, 15 U.S.C. § 1681a(d).

7

52. The consumer report prepared by Defendant First Advantage and furnished to Defendant Wells Fargo contained inaccurate information regarding Plaintiff and his criminal record.

53. By failing to assure that its consumer report accurately reported Plaintiff's criminal history, Defendant First Advantage violated 15 U.S.C. § 1681e(b), which requires that a consumer reporting agency follow reasonable procedures to assure maximum possible accuracy of information concerning the individual about whom the report relates.

54. Defendant First Advantage's failure to follow reasonable procedures to assure maximum possible accuracy is evidenced by the fact that the public record information regarding Plaintiff makes clear that Plaintiff was not convicted of a crime.

55. Defendant First Advantage's failure to follow reasonable procedures to assume maximum possible accuracy is evidenced by the fact that, upon Plaintiff's best information and belief, the May 2009 consumer report and the August 2009 consumer report did not reflect that Plaintiff had been convicted of a crime.

56. Due to Defendant First Advantage's actions and/or omissions, Plaintiff suffered actual damages in the form of lost wages and benefits, humiliation, emotional distress, attorneys' fees and costs, and other serious damages.

# COUNT II
**Failure to Follow Strict Procedures for Use of Public Record Information
In Violation of the Fair Credit Report Act
(Against Defendant First Advantage Background Services Corp.)**

57. Plaintiff realleges each and every paragraph of this Complaint.

58. Plaintiff is a "consumer" within the meaning of the Fair Credit Reporting Act, 15 U.S.C. § 1681a(c).

59. Defendant First Advantage Background Services Corporation is a "consumer reporting agency" within the meaning of the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f).

60. The background check regarding Plaintiff prepared by Defendant First Advantage on or around February 1, 2011, is a "consumer report" within the meaning of the Fair Credit Reporting Act, 15 U.S.C. § 1681a(d).

61. The consumer report prepared by Defendant First Advantage and furnished to Defendant Wells Fargo contained inaccurate information regarding Plaintiff.

62. By failing to assure that its consumer report accurately reported Plaintiff's criminal history, Defendant First Advantage violated 15 U.S.C. § 1681k(a)(2), which requires a consumer reporting agency to "maintain strict procedures to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date."

63. Defendant First Advantage's failure to maintain strict procedures to insure the public record information is complete and up to date is evidenced by the fact that the

public record information regarding Plaintiff makes clear that Plaintiff was not convicted of a crime.

64. Defendant First Advantage's failure to maintain strict procedures to insure the public record information is complete and up to date is evidenced by the fact that, upon Plaintiff's best information and belief, the May 2009 consumer report and the August 2009 consumer report did not reflect that Plaintiff had been convicted of a crime.

65. Due to Defendant First Advantage's actions and/or omissions, Plaintiff suffered actual damages in the form of lost wages and benefits, humiliation, emotional distress, attorneys' fees and costs, and other serious damages.

**COUNT III**
**Failure to Comply with Obsolescence Requirements**
**Of the Fair Credit Reporting Act**
**(Against Defendant First Advantage Background Services Corp.)**

66. Plaintiff realleges each and every paragraph of this Complaint.

67. Plaintiff is a "consumer" within the meaning of the Fair Credit Reporting Act, 15 U.S.C. § 1681a(c).

68. Defendant First Advantage Background Services Corporation is a "consumer reporting agency" within the meaning of the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f).

69. The background check regarding Plaintiff prepared by Defendant First Advantage on or around February 1, 2011, is a "consumer report" within the meaning of the Fair Credit Reporting Act, 15 U.S.C. § 1681a(d).

70. The consumer report prepared by Defendant First Advantage and furnished to Defendant Wells Fargo contained adverse items of information which antedated the report by more than seven years, and which was not a record of a conviction of a crime.

71. The Fair Credit Reporting Act prohibits a consumer reporting agency from furnishing a consumer report that contains any adverse item of information, other than records of convictions of crimes, which antedate the report by more than seven years. 15 U.S.C. § 1681c(a)(5).

72. Due to Defendant First Advantage's actions and/or omissions, Plaintiff suffered actual damages in the form of lost wages and benefits, humiliation, emotional distress, attorneys' fees and costs, and other serious damages.

**COUNT IV**
**Failure to Follow Procedures in Case of Disputed Accuracy**
**In Violation of the Fair Credit Reporting Act**
**(Against Defendant First Advantage Background Services Corp.)**

73. Plaintiff realleges each and every paragraph of this Complaint.

74. Plaintiff is a "consumer" within the meaning of the Fair Credit Reporting Act, 15 U.S.C. § 1681a(c).

75. Defendant First Advantage Background Services Corporation is a "consumer reporting agency" within the meaning of the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f).

76. The background check regarding Plaintiff prepared by Defendant First Advantage on or around February 1, 2011, is a "consumer report" within the meaning of the Fair Credit Reporting Act, 15 U.S.C. § 1681a(d).

77. On or around April 22, 2011, Plaintiff disputed to Defendant First Advantage the inaccurate and erroneous information contained in Plaintiff's February 1, 2011 consumer report.

78. By failing to promptly correct, delete, or modify the erroneous information, and by failing to update Plaintiff's consumer report, Defendant First Advantage violated 15 U.S.C. § 1681i, which requires that a consumer reporting agency promptly delete or modify inaccurate information after disputed by a consumer.

79. Due to Defendant First Advantage's actions and/or omissions, Plaintiff suffered actual damages in the form of humiliation, emotional distress, attorneys' fees and costs, and other serious damages.

## COUNT V
**Failure to Provide Pre-Adverse Action Disclosures
In Violation of the Fair Credit Reporting Act
(Against Defendant Wells Fargo Bank, N.A.)**

80. Plaintiff realleges each and every paragraph of this Complaint.

81. Defendant willfully or negligently failed to provide Plaintiff, as required by 15 U.S.C. § 1681b(b)(3): (1) a pre-adverse action disclosure containing a copy of Plaintiff's consumer report; (2) a description in writing of Plaintiff's rights under the Fair Credit Reporting Act; and (3) a pre-adverse action opportunity to dispute the accuracy of the reported information.

82. Due to Defendant Wells Fargo's violations of 15 U.S.C. § 1681b(b) have caused damages to Plaintiff for which damages Defendants are liable under 15 U.S.C. § 1681n.

83. Due to Defendant Wells Fargo's actions and/or omissions, Plaintiff suffered actual damages in the form of lost wages and benefits, humiliation, emotional distress, attorneys' fees and costs, and other serious damages.

### COUNT VI
### Violation of the Accuracy Requirements of the Minnesota Business Screening Services Act
### (Against Defendant First Advantage Background Services Corp.)

84. Plaintiff realleges each and every paragraph of this Complaint.

85. The criminal records disseminated by Defendant First Advantage Background Services Corporation to Defendant Wells Fargo contained inaccurate and incomplete information.

86. As a result, Defendant First Advantage violated the accuracy requirements of Minnesota Statutes § 332.70, Subd. 2.

87. Due to Defendant First Advantage's actions and/or omissions, Plaintiff suffered actual damages in the form of humiliation, emotional distress, attorneys' fees and costs, and other serious damages.

### COUNT VII
### Failure to Correct and Delete Inaccurate Records in Violation of the Minnesota Business Screening Services Act
### (Against Defendant First Advantage Background Services Corp.)

88. Plaintiff realleges each and every paragraph of this Complaint.

89. On or around April 22, 2011, Plaintiff disputed to Defendant First Advantage the inaccurate and erroneous information contained in Plaintiff's February 1, 2011 consumer report.

90. By failing to promptly correct, delete, or modify the erroneous information, and by failing to update Plaintiff's February 1, 2011 consumer report, Defendant First Advantage violated Minnesota Statutes § 332.70, Subd. 3.

91. Due to Defendant First Advantage's actions and/or omissions, Plaintiff suffered actual damages in the form of humiliation, emotional distress, attorneys' fees and costs, and other serious damages.

**COUNT VIII**
**DEFAMATION**
**(Against Defendant First Advantage Background Services Corp.)**

92. Plaintiff realleges each and every paragraph of this Complaint.

93. Plaintiff pleads this claim in the alternative, pursuant to Federal Rule of Civil Procedure 8(d).

94. Defendant First Advantage communicated to Defendant Wells Fargo Plaintiff's February 1, 2011 consumer report.

95. The February 1, 2011, consumer report contained information that was false.

96. The statements contained in the February 1, 2011, consumer report contained information that tended to harm the plaintiff's reputation and to lower the Plaintiff in the estimation of the community.

97. In so doing, Defendant First Advantage defamed Plaintiff.

98. In so doing, Defendant First Advantage committed defamation per se as the statements communicated by Defendant affected Plaintiff in his business, trade, or profession.

99. Due to Defendant First Advantage's defamation, Plaintiff has suffered damages in the form of humiliation, emotional distress, loss of income and benefits, attorneys' fees and costs, and other serious damages.

**COUNT IX**
**NEGLIGENCE**
**(Against Defendant First Advantage Background Services Corp.)**

100. Plaintiff realleges each and every paragraph of this Complaint.

101. Plaintiff pleads this claim in the alternative, pursuant to Federal Rule of Civil Procedure 8(d).

102. Defendant First Advantage failed to exercise reasonable care and was negligent in preparing and distributing the February 1, 2011 consumer report.

103. Defendant First Advantage owed Plaintiff a duty of care. Specifically, Defendant First Advantage owed Plaintiff a duty of care to ensure the information it reported about Plaintiff, which affected his employment and livelihood, was reasonably accurate.

104. Defendant First Advantage breached its duty to Plaintiff.

105. Plaintiff was injured by Defendant First Advantage's breach of duty. Plaintiff was injured in the form of humiliation, emotional distress, loss of income and benefits, attorneys' fees and costs, and other serious damages.

106. Defendant First Advantage's breach of duty was a proximate cause of Plaintiff's injuries.

# COUNT X
# NEGLIGENCE PER SE
**(Against Defendant First Advantage Background Services Corp.)**

107. Plaintiff realleges each and every paragraph of this Complaint.

108. Plaintiff pleads this claim in the alternative, pursuant to Federal Rule of Civil Procedure 8(d).

109. Defendant First Advantage violated the Minnesota Business Screening Services law ("MBSL"), Minn. Stat. § 332.70 by disseminating inaccurate information and failing to correct and delete records which were challenged by Plaintiff as incomplete and inaccurate and were, in fact, incomplete and inaccurate.

110. Similarly, Defendant First Advantage violated the standard of care set forth under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a et seq.

111. Both the MBSL and the FCRA were enacted for the purpose of:

   a. Protecting a class of persons like Plaintiff (individuals subject to criminal background checks for employment);

   b. Protecting the particular interest which was invaded (disclosure of inaccurate and/or incomplete criminal background information);

   c. Protecting that interest against the kind of harm which resulted (termination and/or denial of employment), and;

   d. Protecting that interest against the particular hazard from which the harm results (disclosure of erroneous information resulting in termination).

112. Defendant First Advantage committed negligence per se and, as a result, Plaintiff was injured in the form of humiliation, emotional distress, loss of income and benefits, attorneys' fees and costs, and other serious damages.

## COUNT XI
**TORTIOUS INTERFERENCE
WITH CONTRACTUAL RELATIONS
(Against Defendant First Advantage Background Services Corp.)**

113. Plaintiff realleges each and every paragraph of this Complaint.

114. Plaintiff had a contract with Defendant Wells Fargo Bank, N.A., for employment, in addition to a prospective contract for employment.

115. Defendant First Advantage was aware of Plaintiff's contract and prospective contract with Wells Fargo.

116. Defendant First Advantage intentionally procured Wells Fargo's breach of contract with Plaintiff.

117. Defendant First Advantage procured Wells Fargo's breach of contract without justification.

118. As a result of Defendant First Advantage's tortious interference with contractual relations, Plaintiff has suffered damages, including, but not necessarily limited to, humiliation, emotional distress, loss of income and benefits, attorneys' fees and costs, and other serious damages.

**WHEREFORE**, Plaintiff requests that judgment be entered against Defendants for the following:

a. Declaring that Defendants' acts and/or omissions described in this Complaint constitute violations of the Fair Credit Reporting Act;

b. Declaring that Defendant's acts and/or omissions described in this Complaint constitute violations of the Minnesota Business Screening Services Act;

c. That Defendants be required to make Plaintiff whole for its adverse actions;

d. That the Court award Plaintiff his actual damages, including damages for lost wages and benefits, humiliation, emotional distress, and other damages;

e. That the Court award Plaintiff his attorneys' fees and cost;

f. That the Court grant such other and further relief as it deems fair and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Dated this 10th day of August, 2012.

BAILLON THOME JOZWIAK
MILLER & WANTA, LLP

s/Daniel Gray Leland
Joni M. Thome, # 232087
Daniel Gray Leland, # 389027
222 South Ninth Street
Suite 2955
Minneapolis, MN 55402
Telephone: (612) 252-3570
Facsimile: (612) 252-3571

*Attorneys for Plaintiff*