UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Mahlon Martin,<br><br>             Plaintiff,<br><br>vs.<br><br>First Advantage Background Services Corp. and Wells Fargo Bank, NA,<br><br>             Defendants. | Case No. 11-cv-03357 (MJD/LIB)<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT WELLS FARGO BANK, NA'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

On July 13, 2012, the Court issued an Order on Defendants' Motions to Dismiss that left Plaintiff's sole claim against Wells Fargo hanging by a thread. The Court observed that if Wells Fargo obtained Plaintiff's background report resulting in his termination in an effort to comply with federal law, such as the Secure and Fair Enforcement for Mortgage Licensing Act of 2008 ("SAFE Act"), then Plaintiff's claim against Wells Fargo cannot succeed. Foreshadowing the instant motion, the Court observed that "this issue may prove simple at the summary judgment stage."

Having concluded discovery, the issue is simple indeed. Wells Fargo has demonstrated, and Plaintiff does not dispute, that it obtained Plaintiff's background report in an effort to comply with the SAFE Act. Because compliance with federal law is at the heart of this undertaking, Plaintiff's background report is not the "consumer report" necessary to sustain his Fair Credit Reporting Act claim against Wells Fargo. Thus, the Court should dismiss the claim against Wells Fargo with prejudice.

## II. PROCEDURAL BACKGROUND

At the outset of this lawsuit, Defendants Wells Fargo Bank, NA ("Wells Fargo") and First Advantage Background Services Corp. ("FABSC") each moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12. (Memorandum of Law & Order, July 13, 2012 (ECF Doc. No. 31), p. 1 ("Order").) Defendants argued that the Fair Credit Reporting Act's ("FCRA") definition of a "consumer report," a precondition to Plaintiff's sole claim against Wells Fargo and various claims against FABSC, contained an applicable exemption. (Order, p. 8.) In particular, Defendants observed that a communication is not a "consumer report" if:

    (A) but for subsection (d)(2)(D), the communication would be a consumer report;

    (B) the communication is made to an employer in connection with an investigation of—
        (i) suspected misconduct related to employment; or

        (ii) compliance with Federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer;

    (C) the communication is not made for the purpose of investigating a consumer's credit worthiness, credit standing, or credit capacity; and

    (D) the communication is not provided to any person except –
        (i) to the employer or an agent of the employer;
        (ii) to any Federal or State officer, agency, or department, or any officer, agency, or department of a unit of general local government;
        (iii) to any self-regulatory organization with regulatory authority over the activities of the employer or employee;
        (iv) as otherwise required by law; or
        (v) pursuant to section 608.

15 U.S.C. § 1581a(y)(1).

The Court held that "[t]here is little doubt that" element (A) was met, and noted that elements (C) and (D) were undisputed. (Order, p. 7.) Consequently, the Court proceeded to analyze whether Plaintiff's background report resulting in his termination met element (B); that is, whether it was made to Wells Fargo "in connection with an investigation of … suspected misconducted related to employment; or compliance with Federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer." (Order, pp. 7-8.) The Court explained that if this element was met, Plaintiff's claim against Wells Fargo (among others) "cannot succeed." (Order, p. 8.)

The Court first analyzed the scope of the exemption, addressing various attempts by Plaintiff to restrict it. (Order, pp. 8-10.) At the conclusion of this analysis, the Court held that Plaintiff's arguments did "not square with the text of the statute"; therefore, "a report received and used in connection with an investigation into the employer's compliance with laws, regulations, or preexisting written internal policies is sufficient to trigger the exemption." (Order, pp. 9-10.)

Next, the Court considered whether Wells Fargo obtained the background report "in connection with its efforts to comply with several federal statutes and regulations." (Order, pp. 11-14.) Of particular note, the Court observed that Wells Fargo is obligated to comply with the SAFE Act by, among other things, ensuring that its mortgage loan originators are registered with a national licensing agency, and establishing a process for reviewing employee criminal history background reports. (Order, pp. 11-12 (citing 12 C.F.R. § 34.101 and 34 104(h)).)

Ultimately, citing the limited review appropriate at the Rule 12 stage, the Court held:

> Whether or not the report at issue in this case qualifies as a consumer report depends on the circumstances surrounding Wells Fargo's decision to obtain it. That information is uniquely in the hands of Wells Fargo, and it would not be appropriate for this Court to examine selected pieces of evidence submitted by Defendants without allowing Plaintiff the benefit of discovery.

(Order, p. 15.) Thus, "[a]lthough the issue may prove simple at the summary judgment stage, the Court declin[ed] to grant Defendants' motion to dismiss." (*Id*.)

Plaintiff now has had the benefit of discovery and the parties have reached the summary judgment stage. Because the undisputed facts demonstrate that Wells Fargo indeed obtained Plaintiff's background report for the purpose of compliance with the SAFE Act, the Court should dismiss Count V against Wells Fargo with prejudice.

### III.  STATEMENT OF UNDISPUTED MATERIAL FACTS

#### A.  PLAINTIFF'S EMPLOYMENT HISTORY

Wells Fargo employed Plaintiff on or around August 10, 2009 in its collections department. (Aff. David James ("James Aff.") Ex. 1; James Aff. Ex. 2 ("Martin Depo.") 194:14-18.) In October 2010, Plaintiff transferred to Wells Fargo's mortgage team and became a Telesales Specialist. (*Id*.) He served in this position until his termination in February 2011. (*Id.*).

#### B.  SAFE COMPLIANCE AND PLAINTIFF'S BACKGROUND CHECK

Wells Fargo began conducting background checks to comply with the SAFE Act around January 2011. (James Aff. Ex. 3 ("Gates Depo.") 9:6-20.) Wells Fargo reviewed

the SAFE Act background checks and determined whether a particular employee was eligible for employment under federal law. (Gates Depo. 16:11-24.)

At some point after he became a Telesales Specialist, Wells Fargo informed Plaintiff that he would be fingerprinted in an effort to comply with the SAFE Act. (Martin Depo. 32:6-13.) Plaintiff authorized First Advantage to provide Wells Fargo a background check on January 5, 2011. (James Aff. Ex. 4; Martin Depo. 34:19-36:11.) It is undisputed that Wells Fargo obtained Plaintiff's background check in order to comply with the SAFE Act. (Martin Depo. 121:18-21; Gates Depo. 21:20-22:12, 99:10-100:14; James Aff. Ex. 5 ("Burnham Depo.") 9:17-10:5, 51:11-52:14, 84:5-7.) It is also undisputed that Wells Fargo employee Gregory Gates subsequently reviewed Plaintiff's background check, also in an effort to comply with federal law. (Gates Depo. 21:20-22:12.)

Following his background check, Wells Fargo concluded that federal law, including Section 19 of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), and its own policies precluded Wells Fargo from continuing to employ Plaintiff. (James Aff. Ex. 6, Interrog. No. 19.) Tami Burnham, an Employee Relations Consultant at Wells Fargo, sent a template email to Plaintiff's supervisor, Kai Larson, which explained that "unfortunately I've received information that a [employee] in your business group is not eligible for employment as a result of the background check/fingerprint recently conducted as part of the SAFE registration process." (Burnham Depo. 20:7-21:15.; James Aff. Ex. 7.) Consequently, Mr. Larson met with Plaintiff on February 4, 2011 and informed him that his employment was being

terminated.  (Martin Depo. 38:15-25.)  Mr. Larson delivered a letter to Plaintiff in his termination meeting on February 4, 2011, which began:

> As discussed in our conversation on 02/04/2011, your background was recently screened/rescreened in order to meet S.A.F.E. Act requirements. As a result of the background screening, a record was found making ineligible for employment with Wells Fargo.  Due to this, your employment has been terminated effective 02/04/2011.

(James Aff. Ex. 8.)

## IV.  LEGAL ARGUMENT

### A.   SUMMARY JUDGMENT STANDARD

"[S]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if there are no genuine disputes as to issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Under this standard, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact is present only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

> Because summary judgment is not disfavored and is designed for 'every action,' panel statements to the contrary are unauthorized and should not be followed.  There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial.

*Torgerson v. City of Rochester*, No. 09-1131, 2001 U.S. App. LEXIS 10938 at * 22-23 (8th Cir. June 1, 2011) (*en banc*) (*quoting Fercello v. County of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010)) (rejecting "panel statements asserting a different standard of review for summary judgment in employment discrimination cases" as "contrary to Supreme Court precedent.").

### B.  THE CONSUMER REPORT EXEMPTION APPLIES.

Plaintiff's sole claim against Wells Fargo alleges a violation of FCRA. (Amended Complaint ¶¶ 80-83.) In particular, Plaintiff contends that Wells Fargo violated 15 U.S.C. § 1681b(b)(3), which provides that "in using a <u>consumer report</u> for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide" the employee with certain information. 15 U.S.C. § 1681b(b)(3) (emphasis added). Thus, to assert a violation of this provision, Plaintiff must establish that Wells Fargo obtained a "consumer report." *Id*.

Certain communications are excluded from the definition of a "consumer report." 15 U.S.C. § 1681a(y). In particular, a communication is excluded if:

>  (A) but for subsection (d)(2)(D), the communication would be a consumer report;
>
>  (B) the communication is made to an employer in connection with an investigation of—
>    (i) suspected misconduct related to employment; or
>    (ii) compliance with Federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer;
>
>  (C) the communication is not made for the purpose of investigating a consumer's credit worthiness, credit standing, or credit capacity; and
>
>  (D) the communication is not provided to any person except –

>     (i) to the employer or an agent of the employer;
>     (ii) to any Federal or State officer, agency, or department, or any officer, agency, or department of a unit of general local government;
>     (iii) to any self-regulatory organization with regulatory authority over the activities of the employer or employee;
>     (iv) as otherwise required by law; or
>     (v) pursuant to section 608.

15 U.S.C. § 1581a(y)(1). Thus, if Plaintiff's background report meets this four-part test, it is not a consumer report and does not trigger the notices that form the basis for Plaintiff's claim against Wells Fargo.

As discussed in the Procedural Background above, the only element of the "consumer report" exemption at issue following the Order is whether Plaintiff's background report was obtained "in connection with an investigation of … suspected misconducted related to employment; or compliance with Federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer." (Order, pp. 7-8.) The record is replete with undisputed facts demonstrating that Wells Fargo obtained Plaintiff's background check in an effort to comply with the SAFE Act:

- At some point after he became a Telesales Specialist, Wells Fargo informed Plaintiff that he would be fingerprinted <u>in an effort to comply with the SAFE Act</u>. (Martin Depo. 32:6-13.)

- Wells Fargo obtained Plaintiff's background check <u>in order to comply with the SAFE Act</u>. (Martin Depo. 121:18-21; Gates Depo. 21:20-22:12, 99:10-100:14; Burnham Depo. 9:17-10:5, 51:11-52:14, 84:5-7.)

- Tami Burnham, an Employee Relations Consultant at Wells Fargo, sent a template e-mail to Plaintiff's supervisor, Kai Larson, which explained that "unfortunately I've received information that a [employee] in your business group is not eligible for employment as a result of the background check/fingerprint <u>recently conducted as part of the SAFE registration process</u>." (Burnham Depo. 20:7-21:15; James Aff. Ex. 7 (emphasis added).)

- Mr. Larson delivered a letter to Plaintiff in his termination meeting on February 4, 2011, which began, "[a]s discussed in our conversation on 02/04/2011, your background was recently screened/rescreened <u>in order to meet S.A.F.E. Act requirements</u>." (James Aff. Ex. 8 (emphasis added).)

Plaintiff acknowledges that he has no basis to dispute the fact that Wells Fargo obtained his background check as part of its SAFE Act compliance efforts. At his deposition, Plaintiff was questioned about the following statement in his termination letter: "As discussed in our conversation on 02/04/2011, your background was recently screened/rescreened in order to meet S.A.F.E. Act requirements." (Martin Depo. 119:22-121:21.) Plaintiff testified as follows,

> Q: Right. I'm not asking you whether or not you agree that you met the SAFE Act requirements. I'm asking you whether you have any reason to believe that that was not the reason why your background – the SAFE Act was not the reason why your background was recently screened as stated here in this letter.
>
> A: I'm sorry, I don't mean to be an idiot, can you rephrase the question?

>Q:  Sure.  Again, the statement is your background was recently screened in order to meet SAFE Act requirements.  Do you have any reason to dispute that statement?
>
>A:  I don't have any reason to dispute that statement.

(Martin Depo. 121:10-21.)

Because Wells Fargo obtained Plaintiff's background report in an effort to comply with the SAFE Act, Wells Fargo has demonstrated beyond dispute that the exemption applies.  Because Plaintiff's termination of employment did not stem from a "consumer report," Plaintiff's FCRA claim against Wells Fargo, Count V, must be dismissed with prejudice.  *See* 15 U.S.C. § 1681b(b)(3) (requiring a "consumer report").  And because Count V is Plaintiff's only claim against Wells Fargo, Wells Fargo must be dismissed from this lawsuit.

## V.  CONCLUSION

Following the Court's Order on Defendants' Motions to Dismiss, Plaintiff's claim against Wells Fargo dangled on the purpose behind Wells Fargo's decision to obtain Plaintiff's background report.  Because the undisputed record establishes that Wells Fargo obtained the background report in an effort to comply with the SAFE Act, the background report is not a "consumer report," and cannot support Plaintiff's FCRA claim against Wells Fargo.  Consequently, the Court should dismiss the claim against Wells Fargo with prejudice, and dismiss Wells Fargo from the action.

Date: July 31, 2013         NILAN JOHNSON LEWIS PA


                            By:  s/ David A. James
                                 David A. James (Reg. No. 337389)
                                 Joseph G. Schmitt (Reg. No. 231447)
                                 120 South Sixth Street, Suite 400
                                 Minneapolis, MN 55402-4501
                                 612.305.7500
                                 djames@nilanjohnson.com
                                 jschmitt@nilanjohnson.com

                            ATTORNEYS FOR DEFENDANT