# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

MAHLON MARTIN,

        Plaintiff,

v.                      **MEMORANDUM OF LAW & ORDER**
                          Civil File No. 11-3357 (MJD/LIB)

FIRST ADVANTAGE BACKGROUND
SERVICES CORP.,

        Defendant.

Daniel Gray Leland and Joni M. Thome, Baillon Thome Jozwiak & Wanta, Counsel for Plaintiff.

Debra L. Weiss and Jenny L. Sautter, Meagher & Greer; Jason A. Spak, Picadio Sneath Miller & Norton, Counsel for Defendant First Advantage Background Services, Corp.

## I.    INTRODUCTION

This matter is before the Court on Defendant First Advantage Background Services' Motion for Summary Judgment [Docket No. 43].  The Court heard oral argument on October 22, 2013.

Because the Court concludes that there is a genuine dispute of material fact regarding whether Defendant reasonably responded to Plaintiff's initial dispute

of his background report, the Court grants in part and denies in part Defendant's

Motion for Summary Judgment.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    Mahlon Martin's 1997 Offense

In 1997, Mahlon Martin ("Plaintiff"), was arrested when a sheriff's uniform

was found in his car.  (Leland Decl., Docket No. 54, Martin Dep. 84:12-85:24.)

Police charged Plaintiff with a felony as a result.  (Martin Dep. 86:9-14.)  Plaintiff

pled guilty to the charge of impersonating a police officer, which is a

misdemeanor.  (Martin Dep. 87:2-9.)  The Ramsey County court suspended

Plaintiff's sentence and required him to serve a year of unsupervised probation.

(Martin Dep. 84:4-8; 87:2-16.)  If Plaintiff completed probation successfully, the

court would dismiss the case.  (Martin Dep. 87:2-16.)  Plaintiff completed

probation without incident, and the court dismissed the matter in 1998 as a

result.  (Martin Dep. 89:15-90:23.)  However, the matter was not expunged at that

time.  (Martin Dep. 17:7-21.)

#### 2.    Wells Fargo and the SAFE Act

In 2008, the United States Congress enacted the Secure and Fair

Enforcement for Mortgage Licensing Act (the "SAFE Act").  12 U.S.C. § 5101

(2008).  The SAFE Act required mortgage originators to provide FBI background check results and general criminal history reports to a nationwide mortgage registry.  Id. § 5104(a).  As an employer of mortgage originators, Wells Fargo was required under the SAFE Act to ensure that its mortgage originators underwent the background check process; if it did not do this, Wells Fargo could not continue employing the mortgage originators.  12 C.F.R. § 208.103(a)(2) (2010).

Pursuant to Section 19 of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Wells Fargo could not employ a mortgage originator who had been convicted of a crime involving dishonesty.  12 U.S.C. § 1829(a)(1) (2011).  However, FIRREA provides a "de minimis" exception to this rule for certain types of crimes; an individual could nonetheless remain employed if they (i) had committed only one offense; (ii) that offense was punishable by a fine of less than $1,000 and a jail term of less than one year, and no jail time was served; (iii) any sentence was entered at least five years before the individual began working; and (iv) the offense did not involve a banking institution.  (Spak Decl., Ex. D, Gates Dep. 31:17-32:16; Ex. D-12, 63 Fed. Reg. 66,187, 66,185 (Dec. 1, 1998).)  Wells Fargo began screening its employees in January 2011 to comply with the SAFE Act.  (Gates Dep. 9:16-20; 28:8-23.)  It

hired Defendant First Advantage Background Services ("First Advantage") to provide reports needed for the screening process.  (O'Connor Decl., Docket No. 29, ¶¶ 3-4; Ex. K, at 1-2.)

### 3.    Plaintiff's Employment with Wells Fargo

Plaintiff was hired by Wells Fargo as a Collector in August 2009.  (Martin Dep. 20-21.)  Plaintiff then worked for Wells Fargo as a Telesales Specialist from October 2010 to February 2011.  (Martin Dep. 28-30, 32, 194:14-18; Spak Decl., Ex. C-9, at MM 157.)  A Telesales Specialist is a type of mortgage loan originator who takes mortgage applications and negotiates terms of loans.  (Martin Dep. 28-30, 32, 194:14-18; Spak Decl., Ex. C-9, at MM 157.)  Plaintiff served in this position until he was terminated in February 2011.  (Martin Dep. 194:14-18.)

### 4.    Defendant Prepares the Report on Plaintiff

Before 2011, Plaintiff had undergone two initial background checks with Wells Fargo, and neither resulted in termination of his employment.  (Martin Dep. 241:4-242:24.)  Between October 2010 and February 2011, Plaintiff was told that he had to submit to a background check in order for Wells Fargo to comply with the SAFE Act.  (Martin Dep. 32.)  Plaintiff consented to allowing Defendant to check his background and provide Wells Fargo with a report.  (Martin Dep.

32:14-33:3; Spak Decl., Exs. C-11, C-12.)  Around January 2011, Wells Fargo

actually began the process of screening its employees to comply with the SAFE

Act.  (Gates Dep., at 9:6-9:20.)

Defendant then prepared a background report on Plaintiff.  (Broom Decl.,

Docket No. 47, ¶¶ 16-17; Ex. A, at FABSC 13.)  The FBI report obtained by

Defendant yielded no information regarding the disposition of a 1997 Ramsey

County, Minnesota assault charge matching Plaintiff's fingerprints.  (Broom Decl.

¶¶ 16-17; Ex. A, at FABSC 13.)  Therefore, under its contract with Wells Fargo,

Defendant was required to investigate Plaintiff's underlying court records to

address the FBI's missing information.  (See Broom Decl. ¶¶ 6, 16-17; Ex. B, at

FABSC 58; Ex. C, at FABSC 323.)

Specifically, Defendant's contract with Wells Fargo required that, if the

FBI's records were incomplete, then Defendant would supplement their report

by contacting courts and obtaining records to complete the information

provided.  (Broom Decl. ¶¶ 6, 8; O'Connor Decl., Ex. K, at FABSC 62, 83.)  This

process is called "rap sheet reconciliation."  (O'Connor Decl., Ex. K, at FABSC 62,

83.)  When conducting rap sheet reconciliation, Defendant uses trained four-

member teams who consult court records or equally credible sources, enter

information into a computer system to prepare the final report, and consult one another and a manager about their work, which is checked before the final report is created.  (Broom Decl. ¶¶ 11-12, 14-15.)  With this process, Defendant's reports are accurate more than 99.975% of the time.  (O'Connor Decl. ¶¶ 4-7.)

Defendant performed rap sheet reconciliation on Plaintiff's FBI record. (Broom Decl. ¶ 17.)  On January 21, 2011, team members requested Plaintiff's criminal records from the Ramsey County courthouse by mail.  (Broom Decl. ¶ 18; Ex. D, at FABSC 54.)  Sometime thereafter, Defendant received Plaintiff's records, and the records showed that no charges had been filed against Plaintiff for aggravated assault.  (See Broom Decl. ¶¶ 19-21.)  However, the records also showed that Plaintiff had been arrested for impersonating an officer and charges had been filed for that offense.  (Broom Decl. ¶¶ 19-21.)

A First Advantage team-member then input the information into Defendant's computer system, and another employee checked the entry.  (Broom Decl. ¶¶ 19, 21.)  The final First Advantage Report (the "Report") appeared as follows:

COURT SERVICES

COMMENTS: Criminal court records were researched in RAMSEY County, MN, with the following results obtained:

6

| | | |
|---|---|---|
| COURT | : | RAMSEY DISTRICT – (F&M) |
| DATE | : | 1/12/1985 – 1/12/2011 |
| RESULTS | : | RECORDS FOUND |
| | | |
| CASE NUMBER | : | 62-TX-97-041983 |
| Type | : | MISDEMEANOR |
| Date Filed | : | 6/27/1997 |
| Charge | : | IMPERSONATING A OFFICER |
| Offense Date | : | |
| Arrest Date | : | 5/29/1997 |
| Disposition | : | 10/9/1998     GUILTY |
| Sentence | : | GUILTY: 09/15/1997 |
| | | JAIL: 1 YEAR |
| | | PROBATION: 1 YEAR/ UNSUPERVISED |
| | | NOTE: CASE DISMISSED 10/09/1998 |

(Broom Decl., Ex. A, at FABSC 4.)  Defendant believed that this information was accurate.  (Broom Decl. ¶ 23; O'Connor Decl. ¶ 8.)  At his deposition, Plaintiff agreed that the majority of this report was correct, but the sentence "JAIL: 1 YEAR" was incorrect.  (Martin Dep. 96-101, 106-07.)  Plaintiff also stated that use of the phrase "Sentence . . . GUILTY" on the Report was also incorrect, but he did not explicitly state that any other portion of the Report was inaccurate.  (Martin Dep. 106-07.)  After the Report was created, "at or around" February 1, 2011, the official court records that were used to make the Report were not filed or stored for future reference due to an apparent employee mistake.  (Leland Decl., Ex. 13, Interrog. Answer No. 3.)

### 5.    Plaintiff's Termination

Upon reviewing the Report, Wells Fargo decided that it could not continue to employ Plaintiff because he had committed a dishonesty crime.  (Gates Dep. 38:14-39.)  Wells Fargo also concluded that the de minimis exception did not apply to Plaintiff because the penalty associated with his dishonesty crime (one year in jail) was too severe to meet the exception.  (Gates Dep. 38:14-39.)  Wells Fargo also determined that Plaintiff did not meet the de minimis exception because it seemingly applied Texas law by mistake (due to the "TX" in the case number listed in the Report: "62-TX-97-041983") and concluded that the maximum fine under Texas law was too high to meet de minimus criteria. (Gates Dep. 5:24-6:2, 42-44; Spak Decl., Ex. D-3, at WF 865.)

Plaintiff's supervisor, Kai Larson, met with Plaintiff on February 4, 2011 and notified him that his employment was being terminated.  (Martin Dep. 38:15-25.)  Larson gave Plaintiff a letter during their meeting, which stated:

> As discussed in our conversation on 02/04/2011, your background was recently screened/rescreened in order to meet S.A.F.E. Act requirements.  As a result of the background screening, a record was found making you ineligible for employment with Wells Fargo.  Due to this, your employment has been terminated effective 02/04/2011.

(Leland Decl., Ex. 4.)  The letter also stated that Plaintiff could call Tami

Burnham, an Employee Relations Consultant at Wells Fargo, if he had questions

about his termination.  (Leland Decl., Burnham Dep. 7:5-6; Leland Decl., Ex. 4.)

### 6.    Plaintiff's Two Disputes of the Report

On February 4, 2011, the same day Plaintiff was terminated, Plaintiff

contacted Burnham, as the letter indicated.  (Martin Dep. 40.)  Burnham told

Plaintiff that he had been terminated because of a 1997 charge for impersonating

an officer.  (Leland Decl., Burnham Dep. 12-13.)  Plaintiff then visited the Ramsey

County courthouse and received a copy of his court records.  (Martin Dep. 12-

13.)  The records provided:

**CASE CHARGES**

| Ct | Statute | Type | Description | Disposition |
|----|---------|------|-------------|-------------|
| 1 | 609.475 | Charging | Impersonating Officer | Dismissed |

. . .

**TERMS OF DISPOSITION OR SENTENCE: COUNT 1**

| Ct | Offense Date | Statute | Description | Offense Disposition |
|----|--------------|---------|-------------|---------------------|
| 1 | 05/29/1997 | 609.475 | Impersonating Officer | Dismissed |

(Leland Decl., Ex. 8.)  The records went on to state in the "Comments" section:

"PG-STAY IMP 1 YR CT-1) NO S/S. VACATE & DISM IF NO VIOL FOUND

PKW."  (Leland Decl. Ex. 8.)

At the courthouse that day, Plaintiff applied to have his record for

impersonating an officer expunged.  (Martin Dep. 17:16-18, 40, 43, 62; Spak Decl.

C-3, C-14.)  On February 7, 2011, Plaintiff faxed his court records to Burnham.

(Leland Decl., Ex. 10; Martin Dep. 41, 53.)  Burnham informed Plaintiff that the

termination could not be overturned.  (Martin Dep. 53-54.)   Plaintiff then had an

expungement hearing at the Ramsey County courthouse on April 20, 2011, and

the court ordered that Plaintiff's record be expunged.  (Martin Dep. 62-64.)

On April 22, 2011, Plaintiff faxed a dispute form about the Report to

Defendant.  (Martin Dep. 67-68.)  The form required Plaintiff to provide the case

number of the disputed information.  (Spak Decl., Ex. C-25.)  The form then

provided a prompt that read: "Please provide a description of the information

that you are disputing referencing case numbers as necessary."  (Spak Decl., Ex.

C-25.)  Plaintiff answered this by writing: "The charge ~~with~~ for impersonating

officer was vacated & dismiss [sic] by the Ramsey County court's citation

#97920613 court file #632-TX-97-041983."  (Spak Decl., Ex. C-25.)

To avoid undue delay in addressing disputed reports that could contain

hundreds of lines of information, Defendant requires its employees who review

disputes to reinvestigate the precise issue disputed.  (Webb Decl., Docket No. 48,

¶¶ 5-7.)   A First Advantage employee used this approach in addressing

Plaintiff's dispute and determined that:

> The consumer disputed case 62-TX-97-041983 claiming the case was
> dismissed.  We reported this case as being dismissed on 10/9/1998.
> There will be no change to our reports . . . as the information is
> correct per the consumer.

(Webb Decl. ¶¶ 5-7, Ex. J.)  During his deposition, Plaintiff was asked whether

this determination by Defendant was unreasonable, and Plaintiff responded that

it was not unreasonable.  (Martin Dep. 221-25.)

Plaintiff filed suit against Defendant and Wells Fargo in October 2011.

(See Notice Removal, Docket No. 1.)  In February 2012, Plaintiff sent Defendant a

second dispute form.  (Martin Dep. 75-77; Spak Decl., Ex. C-28.)  The second

dispute form was more detailed, and disputed whether Plaintiff had been

convicted of impersonating an officer, whether he had been sentenced to one

year in jail, and whether his record had been expunged.  (Martin Dep. 75-77;

Spak Decl., Ex. C-28.)  A First Advantage employee responded to this dispute by

requesting new court records, and the employee was told that there were no

records for the offense because the matter had been expunged.  (Webb Decl., Ex.

J.)  Accordingly, Defendant then deleted the impersonating an officer offense

from the Report.  (Webb Decl, Exs. I, J.)

### B.    Procedural History

On October 20, 2011, Plaintiff filed a lawsuit in Hennepin County District

Court against First Advantage and then-defendant Wells Fargo.  On November

16, 2011, the case was removed to this Court.  Plaintiff's Amended Complaint

[Docket No. 32] alleged Count I: Failure to Follow Reasonable Procedures to

Assure Maximum Possible Accuracy in Violation of the Fair Credit Reporting

Act ("FCRA") (against Defendant First Advantage); Count II: Failure to Follow

Strict Procedures for Use of Public Record Information in Violation of FCRA

(against Defendant First Advantage); Count III: Failure to Comply with

Obsolescence Requirements of FCRA (against Defendant First Advantage);

Count IV: Failure to Follow Procedures in Case of Disputed Accuracy in

Violation of FCRA (against Defendant First Advantage); Count V: Failure to

Provide Pre-Adverse Disclosures in Violation of FCRA (against then-defendant

Wells Fargo); Count VI: Violation of the Accuracy Requirements of the

Minnesota Business Screening Services Act ("MBSSA") (against Defendant First

Advantage); Count VII: Failure to Correct and Delete Inaccurate Records in

Violation of MBSSA (against Defendant First Advantage); Count VIII:

Defamation (against Defendant First Advantage); Count IX: Negligence (against

Defendant First Advantage); Count X: Negligence <u>Per Se</u> (against Defendant First

Advantage); and Count XI: Tortious Interference with Contractual Relations

(against Defendant First Advantage).

On January 9, 2014, as a result of the parties' stipulation, Wells Fargo was

dismissed as a party to this action.  [Docket No. 65]  Defendant First Advantage

has moved for summary judgment on all claims against it.  [Docket No. 43]

## III.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no disputed issue

of material fact.  <u>Celotex</u>, 477 U.S. at 323.  "A dispute is genuine if the evidence is

such that it could cause a reasonable jury to return a verdict for either party; a

fact is material if its resolution affects the outcome of the case."  <u>Amini v. City of</u>

Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

To defeat summary judgment, the nonmovant "must do more than simply

show that there is some metaphysical doubt as to the material facts, and must

come forward with specific facts showing that there is a genuine issue for trial."

Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013).

### B.      FCRA Claims Regarding Regulation of Consumer Reports

The Court grants Defendant's motion for summary judgment as to Counts

I through III.  The first three Counts of Plaintiff's Amended Complaint allege that

First Advantage violated aspects of FCRA that regulate consumer reports.  Those

counts, more specifically, are Count I: Failure to Follow Reasonable Procedures

to Assure Maximum Possible Accuracy in Violation of FCRA; Count II: Failure to

Follow Strict Procedures for Use of Public Record Information in Violation of

FCRA; and Count III: Failure to Comply with Obsolescence Requirements of

FCRA.  Defendant argues that these claims fail as a matter of law because the

Report is not a "consumer report" under FCRA, and therefore, FCRA does not

apply.

The Court agrees.  FCRA does not apply here because the Report is exempt

from FCRA pursuant to 15 U.S.C. § 1681a(y), which explains that a report is

14

exempt if it concerns "suspected misconduct related to employment" or

"compliance with . . . laws and regulations."  Here, the Report was made to

comply with the SAFE Act, as evidenced by Plaintiff and Wells Fargo employees.

(See, e.g., Broom Decl. ¶ 5; Burnham Dep. 9-10, 51-52; Gates Dep. 21-22; Martin

Dep. 32, 61, 121.)  Furthermore, this Court noted that, "[i]f . . . the exemption

applies . . . Counts I, II, III, and V cannot succeed . . . ."  (Order, Docket No. 31, at

8.)  For these reasons, the Court grants summary judgment with respect to these

Counts, which are dismissed with prejudice.

While Plaintiff disputes whether the Report was really meant to comply

with the SAFE Act, upon review of the record, the Court find that this dispute is

not genuine.  The evidence adequately shows that the Report was made in an

effort to comply with federal law.  Accordingly, the exemption from FCRA

applies, and the claims alleged in Counts I through III must fail.

### C.    FCRA and MBSSA Claims Regarding Correcting the Error

The Court denies Defendant's motion for summary judgment with respect

to Counts IV and VII, as there is a genuine dispute of material fact as to the

reasonableness of Defendant's response to Plaintiff's dispute.  Counts IV and VII

of Plaintiff's Amended Complaint allege that Defendant violated aspects of

FCRA and MBSSA when it did not correct the error in the Report after Plaintiff

15

disputed it.  Counts IV and VII, respectively, allege Failure to Follow Procedures in Case of Disputed Accuracy in Violation of FCRA and Failure to Correct and Delete Inaccurate Records in Violation of MBSSA.  As an initial note, the parties do not present arguments about whether the Report is a "consumer report" regarding this FCRA claim because the relevant section of FCRA here applies to a broader category of "communications."  See 15 U.S.C. §§ 1681a(y), 1681i.   The FCRA provision relevant to Count IV only applies to "consumer files," which can contain merely "communications."  See id. § 1681i.  Therefore, that § 1681i of FCRA applies to the Report is undisputed, and although the FCRA claims alleged in Counts I through III are dismissed, the FCRA claim in Count IV remains viable.

Defendant argues that Counts IV and VII fail as a matter of law because First Advantage's failure to correct an error on the Report was not unreasonable given the lack of information provided on Plaintiff's dispute form.  Defendant argues that its investigation was reasonable because the dispute was short, and therefore, the investigation could be short as well.  Defendant asserts that relevant case law does not require reporting agencies to consult court records when addressing every dispute, and the reinvestigation methods used for

Plaintiff's particular dispute were reasonable based on the information provided. Defendant also notes that Plaintiff himself admitted that Defendant's response to his dispute was reasonable.

The Court concludes that a reasonable jury could find that Defendant's reinvestigation was not reasonable, despite the dispute's brevity and despite Plaintiff's "admission" that the investigation was reasonable.  Accordingly, summary judgment is denied with respect to these counts, which will now be discussed in turn.

### 1.    Count IV: Failure to Follow Procedures in Case of Disputed Accuracy in Violation of FCRA

The Court concludes that a reasonable jury could find that Defendant violated both FCRA and MBSSA by not adequately reinvestigating the Report after Plaintiff submitted his dispute.  FCRA requires that reporting agencies respond to disputes by "review[ing] and consider[ing] all relevant information submitted by the consumer . . . ."  15 U.S.C. § 1681i(a)(4).  Additionally, an agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information . . . ."  Id. § 1681i(a)(1)(A).

17

There is an interaction between FCRA and MBSSA.  MBSSA provides that, "[a] business screening service in compliance with the applicable provisions of [FCRA] is considered to be in compliance with this section."  Minn. Stat. § 332.70(5)(b) (citations omitted).  The result of this is that, if Defendant complied with FCRA, it automatically complied with MBSSA.

Defendant argues that it complied with FCRA in conducting a reasonable reinvestigation after Plaintiff disputed the Report.  Defendant concludes that its reinvestigation was reasonable for three reasons: (1) Plaintiff testified that the reinvestigation was not unreasonable; (2) the statutory text of FCRA shows that the reinvestigation was reasonable; and (3) the relevant case law provides that Defendant's reinvestigation was reasonable.

First, Defendant recognizes that Plaintiff testified to the reasonableness of the reinvestigation conducted by Defendant.  Defendant points out that Plaintiff stated this on the record:

> Q. Was it unreasonable for First Advantage to say since you said the case had been dismissed and our report said the case was dismissed, we'll just keep the report the same? Was that an unreasonable decision?
>
> . . .
>
> A. No.

. . .

Q. Okay. So in other words, First Advantage's decision was not unreasonable?

. . .

A. From what I wrote down, I would say no, it was not unreasonable.

(Martin Dep. 223:16-25 (objections in between answers and re-reading of the

question have been omitted).)  Because of this testimony, Defendant argues that

Plaintiff cannot assert a violation of FCRA or MBSSA.

The Court concludes that Defendant's argument here is unpersuasive.

While Plaintiff has admitted that Defendant's reinvestigation efforts were "not

unreasonable," a reasonable juror could give his statement little weight, simply

because Plaintiff is a layperson.  Plaintiff is not necessarily aware of what

"reasonableness" means in this context, especially because there was no mention

in the deposition of the delineation between reasonable and unreasonable

conduct in this situation as established by authoritative case law.  Plaintiff's

statement, then, is merely a factor in assessing the claim, but it should not be

dispositive due to the legal nature of the term "reasonable" here and the

considerations of case law about which Plaintiff was unaware.  It would be

reasonable, therefore, for a jury to accord Plaintiff's statement little weight.

Second, Defendant argues that it complied with the statutory text, which only requires that an agency "review and consider all relevant information submitted by the consumer . . . with respect to such disputed information."  15 U.S.C. § 1681i(a)(4).  Here, Defendant points out that Plaintiff's dispute only stated that "[t]he charge . . . for impersonating officer was vacated & dismiss [sic] by the Ramsey County court . . . ."  (Spak Decl., Ex. C-25.)  Defendant argues that, because its employee reviewed the report and noted that it already said "DISMISSED 10/09/1988," there were no discrepancies with Plaintiff's dispute, and therefore, no changes needed to be made.  Defendant argues that this decision considered the information submitted by Plaintiff, which merely stated that his case had been dismissed, nothing further.

Defendant also acknowledges that Plaintiff submitted a second dispute on February 20, 2012, and this second dispute was more detailed.  In response to the second dispute, Defendant corrected the Report to reflect that Plaintiff's record had been expunged.

The Court concludes that these points do not prevent a reasonable jury from finding for Plaintiff.  Considering the statutory text, a reasonable juror could conclude that, despite the dispute form's apparent consistency with the

Record, more of a reinvestigation should have taken place with respect to the

portion of the Record that was raised on the dispute form.  A reasonable jury

could find that more should have been done to "review and consider all relevant

information submitted by the consumer . . . with respect to such disputed

information."  15 U.S.C. § 1681i(a)(4).   Simply matching the dispute with the

record does not necessarily equate to review and consideration of the disputed

information.  The act of filing a dispute suggests that something is wrong, and

jury could reasonable conclude that Defendant's employees should have done a

bit more to confirm that nothing disputed was incorrect on the Record.

This point is made clear in addressing Defendant's final argument about

case law.  Defendant argues that, according to case law, it did not need to

reexamine Plaintiff's court records in response to his short dispute.  Defendant

raises several cases by United States Courts of Appeals for the First, Fourth,

Seventh, Eighth, and Ninth Circuits.  The Eighth Circuit case, <u>Anderson v. EMC</u>

<u>Mortgage Corp.</u>, provides the rule that "[b]ecause a furnisher's obligation to

conduct a reasonable investigation arises when it receives a notice of dispute

from a CRA [credit reporting agency], it need investigate only 'what it learned

about the nature of the dispute from the description in the CRA's notice of

dispute.'" <u>Anderson v. EMC Mortg. Corp.</u>, 631 F.3d 905, 908 (8th Cir. 2011)

(citation omitted). <u>Anderson</u> cites the Seventh Circuit's decision in <u>Westra v.</u>

<u>Credit Control of Pinellas</u>, 409 F.3d 825 (7th Cir. 2005), which held that a

reporting agency's investigation was reasonable, "given the scant information it

received regarding the nature of [the plaintiff's] first dispute." <u>Id.</u> at 827. The

Seventh Circuit affirmed summary judgment for the defendant based on this

reasoning.

Defendant argues that these cases show that its reinvestigation of the

Report was reasonable and adequate under FCRA because a reasonable

investigation has been interpreted to be an investigation addressing the precise

issues raised in a dispute—in this case, whether the charge was dismissed.

Accordingly, Defendant argues that the Court should grant summary judgment

in its favor on the FCRA and MBSSA claims.

The Court concludes that, even after considering these two cases, a

reasonable jury could conclude that Defendant's reinvestigation was not

reasonable under FCRA. These cases merely hold that a consumer reporting

agency only need to reinvestigate precisely what was disputed. These cases do

not necessarily provide that a reporting agency does not need to revisit court

records if information in a dispute matches information in the agency records.  A reasonable juror could conclude that, under FCRA and the case law, more should have been done here—specifically, Defendant should have reassessed Plaintiff's court records after receiving his first dispute.

Notably, <u>Westra</u> provides the rule that, "[w]hether a defendant's investigation is reasonable is a factual question normally reserved for trial; however, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question."  <u>Id.</u>; <u>see also</u> <u>Meyer v. F.I.A. Card Servs., N.A.</u>, 780 F. Supp. 2d 879, 883 (D. Minn. 2011) (JRT/SER) ("[Q]uestions regarding the reasonableness of an investigation are best for a jury to determine.").  The Court concludes that Defendant's reasonableness is not "beyond question" here.

Furthermore, Defendant's argument that Plaintiff's dispute was short does not necessarily excuse Defendant for what may be considered a cursory reinvestigation, especially because the "Notice of Consumer Dispute" form filled out by Plaintiff was tailored in such a way that it encouraged short responses. For example, the form contained a prompt that read: "Please indicate the screening elements that contain information you wish to dispute the accuracy and/or completeness of that appears in your consumer report."  (Spak Decl., Ex.

C-25, at FABSC 25.)  Plaintiff responded to this prompt by writing down the case number of his 1997 arrest.  (Spak Decl., Ex. C-25, at FABSC 25.)

Additionally, the second part of the form asked the consumer to "provide a description of the information that you are disputing."  (Spak Decl., Ex. C-25, at FABSC 25.)  Plaintiff answered in the manner prompt required—by describing the information.  A description of information is not necessarily as lengthy or comprehensive as an explanation for why that information is wrong.  The Court finds it compelling that Defendant did not delve deeper into information provided on a form designed to require little information.

It is also compelling that Defendant did not re-request official court records despite the fact that it lost its original copy of Plaintiff's records.   A jury could reasonably conclude that, at the very least, Defendant should have checked the court records in response to his dispute in order to conduct a reasonable reinvestigation.  For these reasons, the Court concludes that there is a genuine dispute as to whether Defendant acted reasonably in response to Plaintiff's dispute, and Plaintiff's FCRA reinvestigation claim should be reserved for trial.  Summary Judgment on Count IV is therefore denied.

### 2. Count VII: Failure to Correct and Delete Inaccurate Records in Violation of MBSSA

Because a reasonable juror could conclude that Defendant did not necessarily comply with FCRA regarding reinvestigation, liability under MBSSA is also possible. The Court concludes that the same reasons a jury could find that Defendant did not comply with FCRA also apply to the issue of whether Defendant complied with MBSSA.

MBSSA provides that, when faced with a dispute about a record, a reporting agency must "review and consider all relevant information submitted by the subject of the record with respect to the disputed record to determine whether the record maintained by the screening service accurately reflects the content of the official record, as maintained by the official government custodian." Minn. Stat. § 332.70(3)(a). Defendant has not shown that, upon receiving the dispute, it actually determined whether the Report accurately reflected the content of Plaintiff's court records; Defendant admittedly lost those records, and it did not re-request official records once it received the dispute. A reasonable jury could also conclude that Defendant should have done something more (e.g., revisiting court records) in addressing the dispute, regardless of its

length, in order to meet the MBSSA requirements.    For these reasons, the Court

denies summary judgment with respect to Count VII.

### D.    Count VI: Violation of the Accuracy Requirements of the MBSSA

The Court denies Defendant's motion for summary judgment with respect

to Count VI.

Pursuant to MBSSA,

A business screening service must only disseminate a criminal
record that reflects the complete and accurate record provided by
the source of the data.  A complete and accurate record is a record
that has:
>      (1) been updated within 30 days of its receipt; or
>      (2) been verified with the source of the data within the
>      previous 90 days as being up-to-date.

Minn. Stat. § 332.70(2).

Defendant argues that it is not liable under the statute because it based the

Report on current official court records, i.e., information that was updated within

30 or 90 days.  Indeed, Defendant has cited sufficient evidence in the record to

indicate that it consulted up-to-date and accurate court records.  Defendant

based the Report on new, up-to-date information that it used within ten days of

receipt; Defendant requested the court records between January 19 and January

21, 2011, and it created the Report on January 31, 2011.  (See Broom Decl. ¶¶ 18,

22.)

While this is true, the Court concludes that the relevant MBSSA provision still requires disseminated records to "reflect[]" those court records.  Defendant has not shown that the Report reflected court records; in fact, the record indicates that the Report did not reflect the information provided in the court records, and was therefore inaccurate.  Accordingly, viewing the evidence in the light most favorable to Plaintiff, the Court concludes that a reasonable jury could find for Plaintiff on Count VI.

Accordingly, the Court concludes that Defendant has failed to demonstrate its compliance with this provision of MBSSA, and summary judgment on Count VI is denied.

### E.     Count VIII: Defamation

The Court grants Defendant's motion for summary judgment with respect to Count VIII, Plaintiff's defamation claim, because the evidence shows that the Report was privileged.

To succeed on a claim for defamation, a plaintiff must prove "that the alleged defamatory statement (1) was communicated to someone other than the plaintiff, (2) was false, and (3) tended to harm the plaintiff's reputation and lower [him] in the estimation of the community."  Chambers v. Travelers Cos., 668 F.3d 559, 564 (8th Cir. 2012).  The parties agree that the elements of defamation are

established here.  (See First Advantage's Reply, Docket No. 57, at 2 ("First

Advantage concedes that Martin has established the elements of a claim for

defamation.").)  However, Defendant raises the defense of privilege.

The Court concludes that the record establishes the defense of privilege,

and the defamation claim therefore fails as a matter of law.  Privilege is a defense

to defamation, and if it is successful, a plaintiff can only prevail if he shows that

the defendant acted with actual malice in publishing the information.  Chambers,

668 F.3d at 564.  The existence of privilege is also a matter of law for the court to

decide.  Id.  Alleged defamatory statements are privileged if they are provided

on a proper occasion, for a proper purpose, and on probable cause.  See id.

Furthermore, statements are privileged if they "should be encouraged despite

the risk that the statements might be defamatory."  Bol v. Cole, 561 N.W.2d 143,

149 (Minn. 1997).

As the alleged defamatory statement, the Report was privileged because it

was provided on a proper occasion, for a proper purpose, and on probable cause.

Addressing the first two prongs, the Report was made on a proper occasion for a

proper purpose because Congress has encouraged statements like the Report by

passing the SAFE Act to require employers like Wells Fargo to obtain such

reports and by exempting those reports from FCRA liability through 15 U.S.C. §

1681a(y).  This conclusion is consistent with the holding in <u>McBride v. Sears,</u>

<u>Roebuck & Co.</u>, 235 N.W.2d 371, 374 (Minn. 1975), where the court determined

that "[c]ommunications between an employer's agents made in the course of

investigating or punishing employee misconduct are made upon a proper

occasion and for a proper purpose, as the employer has an important interest in

protecting itself and the public against dishonest or otherwise harmful

employees."  There is also support in the case of <u>Thompson v. Olsten Kimberly</u>

<u>Qualitycare</u>, 33 F. Supp. 2d 806, 816 (D. Minn. 1999), which provides that

"[c]ourts have applied the qualified privilege defense to protect statements made

by employers in the context of investigating employee misconduct, on the

ground that the employer's interest in protecting itself and the public from

harmful employees is important."  The rationale demonstrated by these cases

applies to the Report because it was made in the context of Wells Fargo's

investigation of Plaintiff.  While Wells Fargo's investigation was not one of

Plaintiff's misconduct on the job, the investigation was still driven by the

predominate purpose of protecting the company and the public from dishonest

practices by an employee.  Therefore, the Court concludes that the Report was created on a proper occasion with a proper purpose.

Finally, to address the third prong of the privilege test, the Report was supported by reasonable cause.  For statements to be privileged, they must be "supported by reasonable or probable cause," which can be determined by examining "the precise nature and extent of the investigation [of] the facts supporting the defamatory allegations."  Rudebeck v. Paulson, 612 N.W.2d 450, 454 (Minn. Ct. App. 2000).  The Report was supported by reasonable cause because (1) it was based on actual court records requested by Defendant's employees; (2) it was double-checked for accuracy; and (3) Defendant's reports are accurate more than 99.975% of the time.  While the Report was itself inaccurate, there was reasonable cause for its inaccuracy.  For example, the Report was not unreasonable in stating that Plaintiff was guilty or that he was sentenced to probation because, while these are errors, Plaintiff did plead guilty and he served one year of unsupervised probation.  Even the one year jail sentence erroneously included on the Report had a basis in the court records, which provided "STAY IMP 1 YR."  These errors, thus, arose as reasonable mistakes, as they were grounded in parallels from the court records.

Additionally, there is no evidence of malice here.  Accordingly, the Court

concludes that the Report was privileged and therefore grants summary

judgment on the defamation claim.

    **F.    Other Tort Claims**

    Counts IX, X, and XI of Plaintiff's Amended Complaint allege various tort

claims against Defendant: negligence, negligence per se, and tortious interference

with contractual relations.  The Court grants Defendant's motion for summary

judgment as to these Counts.

    The Court considers each of these Counts without deciding whether they

are parallel actions.  See Wirig v. Kinney Shoe Corp., 461 N.W.2d 374, 379 (Minn.

1990) ("[W]e hold that a sexual harassment action brought pursuant to the

MHRA does not bar a parallel action for common law battery . . . Although we

decide parallel actions can be maintained, we do not uphold double recovery for

the same harm.").  However, the Court notes that the privilege defense to

Plaintiff's defamation claim also applies to the other tort claims alleged in Counts

IX through XI.  "Absolute privilege also bars claims sounding in defamation—

that is claims where the injury stemmed from and grew out of the defamation."

See MSK EyEs, Ltd. v. Wells Fargo Bank, NA, 546 F.3d 533, 544 (8th Cir. 2008)

(citation omitted).   "In Minnesota, a plaintiff cannot elude the absolute privilege

by relabeling a claim that sounds in defamation." Id. (citing Pinto v. International Set Inc., 650 F. Supp. 306, 309 (D. Minn. 1986)).  Accordingly, Plaintiff's tort claims fail for the same reason his defamation claim fails.

### 1.    Count IX: Negligence

Plaintiff's negligence claim fails as a matter of law.  Plaintiff argues that Defendant was negligent in its preparation and distribution of the Report.  (Am. Compl. Docket No. 32, ¶ 102.)  To prevail on a negligence claim, a plaintiff must show "(1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) the breach of the duty being the proximate cause of the injury." MSK EyEs, 546 F.3d at 545 (citation omitted).  The Eighth Circuit stated that it knows "of no authority holding a company has a duty to its clients to maintain accurate internal data," and that "retention of inaccurate data was not the proximate cause of Appellant's alleged injury; if anything, disclosure of the information to third parties produced the alleged injury." Id.

Therefore, here, Defendant's mere preparation of the Report breached no duty.  Plaintiff's injury was instead caused by the communication of the Report by Defendant to Wells Fargo.  Accordingly, Plaintiff cannot prove proximate cause without relying on the same facts as the defamation claim.  The alleged

negligent conduct here stems from the same conduct that formed the basis of the

defamation claim.  Therefore, Plaintiff has "inappropriately dressed their

defamation claim in the garb of negligence."  Id.  Because the Court grants

summary judgment on the defamation claim based on privilege, it grants

summary judgment with respect to the negligence claim as well.

### 2.    Count X: Negligence Per Se

The Court concludes that the negligence per se claim fails as a matter of

law as well.  This claim, however, duplicates Counts IV and VII, asserting that

Defendant breached a statutory standard of care from FCRA and MBSSA when it

failed to correct, delete, or modify the inaccurate information in the Report after

receiving Plaintiff's dispute.  See 15 U.S.C. § 1681i; Minn. Stat. § 332.70.  Plaintiff

also alleges that Defendant breached the statutory duties in FCRA and MBSSA

regarding dissemination of inaccurate reports (Am. Compl. ¶ 109.)

The Court concludes that the negligence per se claim fails as a matter of

law.  Plaintiff asserts that Defendant is negligent per se for violating MBSSA and

FCRA.  "When negligence per se is appropriate, showing a violation of a statute

substitutes for plaintiff's required showing of duty and breach."  Mine v. Federal

Home Loan Mortg. Corp., No. 13-220, 2013 WL 2443852, at *4 (D. Minn. June 5,

2013). "[N]ot every violation of a statute constitutes negligence." In re Prof'l Fin.

Mgmt., Ltd., 692 F. Supp. 1057, 1065 (D. Minn. 1988) (citing Johnson v. Farmers &

Merchs. State Bank of Balaton, 320 N.W.2d 892 (Minn. 1982)). Negligence per se

statutes typically provide for a private right of action or are safety statutes, "for

which the per se negligence doctrine is more typically appropriate." Id.

Assuming without deciding that MBSSA and FCRA are negligence per se

statutes, MSK EyEs is instructive. Insofar as Plaintiff alleges that Defendant was

negligent by "disseminating inaccurate information" under FCRA or MBSSA,

this claim faces the same fatal flaw as the negligence claim because it merely

"dresse[s] [Plaintiff's] defamation claim in the garb of negligence." MSK EyEs,

546 F.3d at 545. Plaintiff cannot elude the privilege defense for this aspect of the

claim, and therefore, the allegation that Defendant was negligent by

communicating the report fails as a matter of law.

With respect to the Defendant's remaining potential breach of the

MBSSA's duty to correct inaccurate information in response to a dispute, the

Court concludes that this claim in negligence per se fails as a matter of law

because the element of causation is insufficiently established. Plaintiff's alleged

injury is "humiliation, emotional distress, loss of income and benefits, attorneys'

fees and costs, and other serious damages." (Am. Compl. ¶ 112.) Plaintiff has

failed to show that Defendant's reinvestigation of the Report after Plaintiff

submitted his first dispute form caused these injuries. These injuries were

proximately caused, rather, by the initial communication of the Report, which

was privileged; the mere "retention of inaccurate data was not the proximate

cause of [Plaintiff's] alleged injury." See MSK EyEs, 546 F.3d at 545.

Accordingly, the Court concludes that Plaintiff's negligence per se claim

fails as a matter of law, and summary judgment is granted with respect to Count

X.

### 3. Count XI: Tortious Interference with Contractual Relations

Finally, Plaintiff's tortious interference claim also fails. Plaintiff alleges

that, by communicating inaccurate information in the Report, Defendant

"intentionally procured Wells Fargo's breach of [employment] contract with

Plaintiff." (Am. Compl. ¶ 116.) "[W]hen the same defamation forms the basis of

both a tortious interference and defamation claim, the tortious interference claim

is encompassed by the defamation claim. Hence, respondents cannot sustain

their separate tortious interference claims." Am. Iron & Supply Co. v. Dubow

Textiles, No. C1-98-2150, 1999 WL 326210, at *5 (Minn. Ct. App. May 25, 1999)).

Privilege, therefore, applies as a defense to this claim.

Furthermore, the evidence shows that the element of intent is missing from this claim.  A tortious interference claim is defeated if intent is not proven.  Witte Transp. Co. v. Murphy Freight Lines, Inc., 193 N.W.2d 148, 151-52 (Minn. 1971). Plaintiff has offered no evidence that Defendant intended to interfere with Plaintiff's contractual relationship with Wells Fargo.  (See Martin Dep. 115:18-116:9).  Accordingly, the Court concludes that Plaintiff's tortious interference claim fails as a matter of law, and summary judgment is granted as to Count XI.

Accordingly, based on all the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that First Advantage Background Services' Motion for Summary Judgment [Docket No. 43] is **GRANTED in part and DENIED in part**; the motion is **GRANTED** with respect to Counts I, II, III, VIII, IX, X, and XI; the motion is **DENIED** with respect to Counts IV, VI, and VII.


Dated:   March 25, 2014                   s/ Michael J. Davis
                                          Michael J. Davis
                                          Chief Judge
                                          United States District Court